**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| DATA ENGINE TECHNOLOGIES LLC, | |
| Plaintiff, | |
| v. | C.A. No. 14-1115-LPS-CJB |
| GOOGLE INC., | |
| Defendant. | |

## GOOGLE INC.'S RESPONSIVE CLAIM CONSTRUCTION BRIEF

OF COUNSEL:

Jonathan K. Waldrop
Darcy L. Jones
Robert P. Watkins III
Marcus A. Barber
John W. Downing
Heather S. Kim
KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP
333 Twin Dolphin Drive, Suite 200
Redwood Shores, California 94065
(650) 453-5170

Jeffrey J. Toney
Rodney R. Miller
KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP
1349 West Peachtree Street N.W., Suite 1500
Atlanta, Georgia 30309
(404) 260-6080

Dated:  November 20, 2015

Frederick L. Cottrell , III (#2555)
cottrell@rlf.com
Jason James Rawnsley (#5379)
rawnsley@rlf.com
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
(302) 651-7700


*Attorneys for Defendant*
*GOOGLE INC.*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................ ii

I.  INTRODUCTION ............................................................................................ 1

II. LEVEL OF ORDINARY SKILL IN THE ART .............................................. 2

III. GOOGLE'S CONSTRUCTIONS SHOULD BE ADOPTED .......................... 2

    A.  The '146 Patent ("Scenario Management" Patent) Disputed Terms ..................... 2

        1.  The Prosecution History Does Not Support DET's Interpretation of the Invention. .............................................................................. 2

        2.  "Specifying a base set of information cells" ............................... 4

        3.  "Version" terms: "Different versions;" "New version;" and "Base version" ................................................................................. 7

        4.  "Maintaining the new version by storing additional information for only those portions determined to have changed" ..................... 9

    B.  '551 Patent ("Spreadsheet Tab" Patent) Disputed Terms ................................. 11

        1.  "Storing said first and second pages of the plurality of cell matrices such that they appear to the user as being stored within a single file" ......................................................................................... 11

    C.  '545 Patent ("Spreadsheet Tab" Patent) Disputed Terms ................................. 12

        1.  "Single disk file" ..................................................................... 12

    D.  '591 Patent (User Interface Object creation) Disputed Terms ........................... 14

        1.  "Generating a User Interface Object" terms ............................ 14

        2.  "Linking" ................................................................................. 17

        3.  "Displaying said user interface object with a value of said value property of said value property of the given cell object" ........................ 18

        4.  "End-user input that effects a change in the value of said value property of said user interface object" .................................... 20

IV. CONCLUSION ............................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bell Commc'ns Research, Inc. v. Vitalink Commc'ns Corp.*,
    55 F.3d 615 (Fed. Cir. 1995)....................................................................7

*Bicon, Inc. v. Straumann Co.*,
    441 F.3d 945 (Fed. Cir. 2006)..................................................................5

*Catalina Marketing Int'l, Inc. v. Coolsavings.com, Inc.*,
    289 F.3d 801 (Fed. Cir. 2002)...............................................................7, 8

*Datamize, LLC v. Plumtree Software, Inc.*,
    417 F.3d 1342 (Fed. Cir. 2005)..............................................................12

*HTC Corp. v. IPCom GmbH & Co., KG*,
    667 F.3d 1270 (Fed. Cir. 2012)................................................................8

*Intellectual Ventures II, LLC v. AT & T Corp.*,
    No. 1:13-CV-116-LY, 2015 WL 4138590 (W.D. Tex. July 8, 2015) ......................6

*Kraft Foods, Inc. v. Int'l Trading Co.*,
    203 F.3d 1362 (Fed. Cir. 2000)................................................................5

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    134 S. Ct. 2120 (2014) .....................................................................11, 12

*O.I. Corp. v. Tekmar Co., Inc.*,
    115 F.3d 1576 (Fed. Cir. 1997)................................................................5

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005)..............................................................16

*Toro Co. v. White Consolidated Indus. Inc.*,
    199 F.3d 1295 (Fed. Cir. 1999)..............................................................18

## I.    <u>INTRODUCTION</u>

Plaintiff Data Engine Technologies LLC ("DET") proposes "plain and ordinary meaning" and "no construction necessary" for almost all disputed terms in the case, yet advocates meaning of disputed terms in its opening Claim Construction Brief.  DET's positions are based on unrepresentative, limited portions of the intrinsic records of the patents, and fail to reflect the clear teachings of the full record concerning the scope of the inventions.

For example, for the '146 patent, DET argues that the inventors invented "track changes" in spreadsheets; instead, the patent is directed at a specific means for a user to create different data scenarios from a single base data model, where differences between the new scenario and base data set are determined after the user makes all changes to the base.  The '146 Patent explains that the user makes changes to the base data model to create scenarios which the user can save, name, and organize.   For the '591 patent, DET argues that the inventor invented *any* means of developing applications for spreadsheets, which would include the creation of applications using, for example, source code.  The patent, however, is clearly directed at a "drag and drop" means of building applications using a graphical user interface, which allows the user to avoid the use of source code.  With respect to the '259, '551, and '545 patents, DET argues, *inter alia,* that the inventors disclosed *any* means of storing spreadsheet pages, but the patents disclose only storing spreadsheet pages "in a single disk file."

DET's "no construction" constructions invite broad interpretations of the patents covering subject matter never disclosed or contemplated, and therefore, invite the jury to misunderstand the scope of the inventions.  Google's constructions, on the other hand, are based on the intrinsic record, and will assist the fact-finder in understanding the true scope of the alleged inventions.  Google's constructions should thus be adopted.

## II.   LEVEL OF ORDINARY SKILL IN THE ART

| Google's Proposal | DET's Proposal |
|---|---|
| A person with an undergraduate degree in computer science, or equivalent course work, and two or more years' experience working as a programmer or software user interface designer with general familiarity with databases and/or spreadsheet-style applications. | A person with at least a bachelor's degree in computer science, electrical or computer engineering, or a related technical field, 2-4 years of work experience, and some experience in working with user interface design and implementation, who also has extensive experience in working with spreadsheet applications. |

The parties generally agree on the qualifications of a person of skill in the art: both Google and DET agree that the person of skill would have an undergraduate degree in computer science, or equivalent, more than two years of experience, and experience with spreadsheet-style applications.

## III.   GOOGLE'S CONSTRUCTIONS SHOULD BE ADOPTED

### A.   The '146 Patent ("Scenario Management" Patent) Disputed Terms

DET proposes a "plain and ordinary meaning" for all disputed terms of the '146 patent, a position that this Court has found unpersuasive and generally not "an appropriate resolution of a material dispute over the scope of a claim term."[1]  (D.I. 89, "DET Opening Br." at 20-24.)  But for certain terms, DET ascribes new meanings never previously disclosed to Google. This is presumably so that DET can later argue that the Court agreed that DET's proposed claim scope was covered by the plain and ordinary meaning of the term. DET's strategy of defining claim scope without providing a construction should be rejected.

#### 1.   The Prosecution History Does Not Support DET's Interpretation of the Invention.

In its summary of the examiner's statement of allowance for the '146 patent, DET mischaracterizes the examiner's statement to support its "plain and ordinary meaning"

---

[1] See Honorable Leonard P. Stark's *Revised Procedures for Managing Patent Cases* (June 18, 2014) at 8.

constructions. (DET Opening Br. at 20.) Specifically, DET's summary of the examiner's statement omits key language and changes the actual language used by the examiner to describe the invention.[2] Table 1 below compares DET's summary with the examiner's actual statement:

| DET's Characterization of the Examiner's Statement (DET Opening Br. at 20) | PTO Examiner's Statement[3] |
|---|---|
| "First, the examiner noted that tracking different versions of the data model and automatically determining which cells have changed by *comparing cells in the new version and the old version* to determine which cells have changed was novel and unobvious." | "The Examiner considers the recited system and method of modeling *user-defined information in a data model spreadsheet* that tracks different versions of the data model and automatically determines which cells of the data model have been changed by *comparing cells in the new version against corresponding cells in a base set* to be novel and unobvious." |

**Table 1:** Comparison of DET's Summary of the Examiner's Reasons for Allowance vs. the Examiner's Actual Statements.

DET first omits the portion of the examiner's statement (DET Opening Br. at 20) that confirms that the invention included "*user-defined information* in a data model spreadsheet..." (Examiner's Reasons for Allowance at 2.) DET next changes the language the examiner used when describing the comparing step of the '146 patent by replacing the term "base set" with "old version." The phrase "old version" or even the word "old" is not used anywhere in the '146 patent specification. Google's constructions, on the other hand, are properly supported by the claim language and the intrinsic record, including the examiner's complete reasons for allowance. DET's arguments to the contrary should be rejected.

---

[2] Notably, DET does not attach the examiner's statement as an exhibit to its brief.

[3] See Declaration of Jonathan Waldrop in Support of Google Inc's Responsive Claim Construction Brief ("Waldrop Decl") at Ex. A (Notice of Allowability, dated September 20, 1993 at 2.)

2. <u>"Specifying a base set of information cells"</u>

| Claim Term(s) | Google's Proposed Construction | DET's Proposed Construction |
|---|---|---|
| "Specifying a base set of information cells"<br><br>Claim: 1 | User selecting a set of cells in an open notebook as a base set from which user defined scenarios are created. | Plain and ordinary meaning. No construction necessary. |

DET argues that Google's proposed construction of "specifying a base set of information cells" would effectively make the scope of claims 1 and 2 identical, running afoul of the doctrine of claim differentiation. (DET Opening Br. at 23.) DET does not explain how it contends the two claims are different.

Claim 2 requires two separate steps, "selecting a capture area comprising information cells which the system is to automatically track," and "capturing as the base set information in the capture area which the user desires to serve as a reference against which new versions are compared." The patent describes these two steps, *i.e.*, the "capture area defines a set of information cells in which the Scenario Manager will track all changes" (D.I. 53, JCCS, Ex. E, "'146 patent," 9:15-18.) and the user selects the "base model" by instructing the system to capture the baseline. (*Id.* at 9:42-47.) Figure 5A of the '146 patent further confirms that both the capture area and base set are specified ("specify capture area and base case"). Figure 3A also discloses a "sample model (worksheet), which is to serve as a base case." (*Id.* at 3:57-60.) Claim 2 confirms that the "base set" includes the underlying data which will "serve as a reference against which new versions are compared." This is consistent with claim 1 which (b) requires at least one information cell to be modified "from the specified ***base set***" and limitation (c) that compares "cells in the new version against corresponding ones in the ***base set***." Claim 2 thus confirms Google's construction that "specifying a base set of information cells" refers to a set of cells in an open notebook as a base set from which user defined scenarios are created.

Unlike claim 2, claim 1 requires only one step with respect to the "base-set," - "specifying a base set of information cells for the user to track changes."  Because claim 2 includes two separate steps and because Google's proposed construction does not encompass both steps, claim 2 is narrower than claim 1 and the doctrine of claim differentiation does not apply.  *Kraft Foods, Inc. v. Int'l Trading Co.*, 203 F.3d 1362, 1368 (Fed. Cir. 2000) ("[T]hat the claims are presumed to differ in scope does not mean that every limitation must be distinguished from its counterpart in another claim, but only that at least one limitation must differ.")  Even if the doctrine of claim differentiation did apply, the presumption should be overcome in this case, because nothing in the specification supports a broader claim scope.  *O.I. Corp. v. Tekmar Co., Inc.,* 115 F.3d 1576, 1582, (Fed. Cir. 1997) ("Although the doctrine of claim differentiation may at times be controlling, construction of claims is not based solely upon the language of other claims; the doctrine cannot alter a definition that is otherwise clear from the claim language, description, and prosecution history.")  DET has failed to demonstrate otherwise.

DET next argues that Google's proposed construction excludes two embodiments – the "default capture area" embodiment and the bounding box embodiment.  With respect to the former, claim 1 does not require the user to separately specify the "capture area" specifically as claim 2 requires.  Claim 1 requires the user only to specify the "base set of information cells for the system to track changes."  Even if DET is correct that claim 1 requires specifying the "capture area." DET's argument that the "specifying" limitation is met without specifying anything would render the term "specifying" meaningless.  ('146 patent at 9:15-18); *see Bicon, Inc. v. Straumann Co*., 441 F.3d 945, 950–51 (Fed. Cir. 2006) ("[C]laims are interpreted with an eye toward giving effect to all terms in the claim.").

With respect to the latter, DET's argument that Google's proposed construction omits the bounding box embodiment is also incorrect. (DET Opening Br. at 24.) As explained above, Claim 1 does not require the selection of the "capture area." Moreover, claim 1 does not encompass the bounding box embodiment because the method steps in claim 1 require a specific order due to the plain language of the claim. Claim 1 not only orders the steps as (a), (b), and (c), but it requires the user to specify a base set of information cells (first) and modify at least one information cell "*from the specified base set*" (second). *Intellectual Ventures II, LLC v. AT &T Corp.*, No. 1:13-CV-116-LY, 2015 WL 4138590, at *13 (W.D. Tex. July 8, 2015) (finding that method steps required order due to the antecedent basis between method steps). Even if the "capture area" limitation was encompassed in claim 1, the bounding box embodiment requires the user to modify the base set first and then instruct the system to define the capture area around the user's changes second. ('146 patent, 12:56-59 ("Alternatively, the system may automatically determine the capture area, for example, from a bounding box which includes all cells changed by the user.").) DET's conclusion that the system and not the user "specifies the base set of information cells" is also incorrect. (DET Opening Br. at 24.) The '146 patent discloses only that the user defines the base set and contains no disclosures in which the system defines what information should be included in the base set.

DET's position is also contradicted by DET's own argument that the patent examiner's statements of allowance should be used to interpret the claims. (DET Opening Br. at 20.) The examiner specifically found that modeling **user-defined information in a data model spreadsheet** was novel (addressed above) and that the base set was "select[ed]." (Examiner's Reasons for Allowance at 2.) Because Google's proposed construction is consistent with the claim language and intrinsic record, and because DET has provided no proposed construction,

Google respectfully requests that the Court adopt Google's construction, which properly reflects that the limitation requires specific and deliberate selection by a user in an open notebook or spreadsheet.

        3.       "Version" terms: "Different versions;" "New version;" and "Base version"

| Claim Term(s) | Google's Proposed Construction | DET's Proposed Construction |
|---|---|---|
| "Different versions" <br><br> Claims: 1 and 26. | User defined scenarios made by modifying the base version. | Plain and ordinary meaning. No construction necessary. |
| "New version" <br><br> Claims: 1, 26, 27, 32, 33, and 34. | New user defined scenario made by modifying the base version. | Plain and ordinary meaning. No construction necessary. |
| "Base version" <br><br> Claims: 1 and 26. | A single user defined reference version which is modified to create a new scenario. | Plain and ordinary meaning. No construction necessary. |

Similar to DET's approach to the limitation "specifying a base set of information cells," DET does not provide constructions or insight into what DET contends the terms "different versions," "new version," and "base version" mean.

Regarding "different versions," DET argues that the preambles to claims 1 and 26 have no effect because they only state a purpose or intent for the use of the invention, *i.e.*, "it is clear that the patentee is stating the purpose of the invention." (DET Opening Br. at 21.) The Federal Circuit, however, requires that preambles be given effect when they form the antecedent basis for claim terms (*Bell Commc'ns Research, Inc. v. Vitalink Commc'ns Corp.*, 55 F.3d 615, 620 (Fed. Cir. 1995)) or are essential for understanding limitations or terms in the claim body. *Catalina Marketing Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 807–11, (Fed. Cir. 2002). Here, the preamble for claims 1 and 26 serves as the antecedent basis for the terms "data model," "different versions," and/or "spreadsheet model." ('146 patent at 14:1-5 and 16:7-9.) The preamble is further necessary to define and limit the invention to "an electronic spreadsheet

system for modeling user-specified information" and "to an electronic spreadsheet system … for storing different versions of a spreadsheet model." (*Id.*) This is consistent with the examiner's statement for allowing the claims (addressed above). Lastly, DET has previously proposed constructions for the terms "electronic spreadsheet system" and "information cells" present in the preambles for claims 1 and 26. (D.I. 53, "Joint Claim Construction Statement" at 10-11.) DET's new position that the preambles for claims 1 and 26 should *not* be given effect contradicts DET's tacit admission that they should.

DET next takes issue with Google's proposed constructions that include the term "scenario" for the terms "new version" and "different versions," but not for the construction of "base version." (DET Opening Br. at 21-23.) DET argues that the term "version" is presumed to have the same meaning, concluding that the term "version" is more readily understood than the "obtuse" scenario which "does not add clarity." (*Id.* at 22.) With respect to the latter argument, the modifiers "new," "different," and "base" change the meaning of the claim term "version." *HTC Corp. v. IPCom GmbH & Co., KG*, 667 F.3d 1270, 1274 (Fed. Cir. 2012) ("Modifiers should be placed next to the words they modify.") Google's proposed constructions properly construe the term "version" according to the modifiers and the usage of the terms in the '146 patent specification. The terms "version" and "scenario," for example, are used interchangeably when the patents describe creating new versions or when versions are compared against the base. (*See e.g.* '146 patent at 3:63-65; 4:5-7; 9:4-5; 13:19-21; 13:27-28; 13:37-38.) Figure 5B of the '146 patent likewise confirms that all versions other than the "base" are referred to as "scenario[s]."



DET next argues that the term "scenario" should not be imported into claim 1 because claim 13 also uses the term "scenario." (DET Opening Br. at 22.) Claim 13, however, does not simply exchange the term "new version" for "scenario," claim 13 claims "capturing the new version as a ***user-nameable*** scenario." Claim differentiation does not apply because claim 1 does not require the limitation "user-nameable." *See Kraft*, 203 F.3d at 1368 (finding claim differentiation does not apply if at least one limitation differs).

Lastly, DET argues that the "base version" does not need to be "user defined." But DET ignores its own reference to the examiner's statement of allowance, and the '146 patent specification, which requires the user to define what information will serve as the base set. (*See* Google's Opening Br. at 2-4, 10-12.) DET fails to identify a single embodiment where the system, and not the user, defines the "base set." (DET Opening Br. at 22.)

4.   <u>"Maintaining the new version by storing additional information for only those portions determined to have changed"</u>

| Claim Term(s) | Google's Proposed Construction | DET's Proposed Construction |
|---|---|---|
| "Maintaining the new version by storing additional information for only those portions determined to have changed" | Maintaining the new version by storing only portions of the new version which have changed when compared against the base version. | Plain and ordinary meaning. No construction necessary. |

DET argues that there is no support for Google's incorporation of its definitions of "new version" and "base version" into the above referenced limitation. (DET Opening Br. at 21-22.) Other than this bare conclusion, DET fails to point to anything in the intrinsic record that contradicts Google's proposed construction. In addition to the description of the '146 patent in Google's Opening Brief, Figures 5A ("flowchart of a scenario management method of the present invention") and 5B ("block diagram illustrating a preferred method for maintaining (tracking and storing) cell information for new versions or scenarios") confirm that the '146 patent requires the comparison of a new version/scenario against the base. ('146 patent at 4:3-7.) The patent uses the terms scenario and version interchangeably throughout the patent when addressing versions other than the base. (*See e.g. id.*, 3:63-65; 4:5-7; 9:4-5; 13:19-21; 13:27-28; 13:37-38.) With respect to Figure 5A, the patent explains that at the conclusion of step 505, the user has created a new scenario (*i.e.* new version) using the scenario management tools of the present invention. (*Id.* at 13:8-10.)

The patent explains with reference to Figure 5B that "***different versions or scenarios*** represent incremental changes from the base" (*id.* at 13:19-21) and that when storing, the "user saves the current notebook with the ***different scenarios (versions)*** being stored as changes from the parent or base." (*Id.* at 13:15-18; *see also*, 13:24-27 ("The present invention recognizes … that each additional version [*i.e.* scenario] may be represented by just storing the difference (delta) record(s)." (emphasis added).) Given the ample intrinsic support for Google's proposed construction, and the absence of any cited support from DET, Google respectfully requests that the Court adopt Google's proposed construction.

**B.     '551 Patent ("Spreadsheet Tab" Patent) Disputed Terms**

1.     "Storing said first and second pages of the plurality of cell matrices such that they appear to the user as being stored within a single file"

| Claim Term(s) | Google's Proposed Construction | DET's Proposed Construction |
|---|---|---|
| Storing said first and second pages of the plurality of cell matrices such that they appear to the user as being stored within a single file<br>Claims: 1. | Indefinite. | Storing said first and second pages of the plurality of cell matrices such that they are accessible to the user by a single file name. |

As discussed in Google's Opening Brief, and as Dr. John D. Kubiatowicz recognized in his declaration, the use of the term "appear to the user" "fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention" because the specification and prosecution history of the '551 patent fail to provide objective boundaries as to what a user must observe to appear that the matrices have been stored within a single file. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014). DET admits that the claim language depends directly on the user's perception: "It is clear that the first and second pages are perceived by the user as being stored within a single file ...." (DET Opening Br. at 10.) DET also asserts that the term "appear to the user" is definite because the term "appear" is used in the specification to mean perceived by the user.[4] But the '551 patent provides no objective standard defining what a

---

[4] DET cites to a few cases in a footnote to assert that this disputed claim term is not indefinite because courts have construed terms containing the words "appear" and "appearance." (DET Opening Br. at 9, fn. 6.) However, these cases are easily distinguishable. First, the Eastern District of Texas, in *IP Innovation LLC et al v. Red Hat Inc. et al*, 2:07-CV-00447 (E.D. Tex 2009) (DET Opening Br. At Ex. E) "did not find the term [appear to the user to be the same tool] indefinite," which DET claims. *Id*. In fact, the court in that case did not address indefiniteness. Therefore, no persuasive value can be gained from this case because the question of indefiniteness, which is the present dispute, was not at issue. Further, the remaining cases cited by DET construing terms containing "reduce the appearance of" or "appearance" differ from this current dispute because those terms do not depend on the perception of a particular user as claimed in the '551 patent. *Id*.

user must observe in order for it to "appear" that the matrices have been stored within a single file. (*See* D.I. 88, "Kubiatowicz Decl." at ¶¶ 11-14.) Moreover, the patentee had the option of describing an observable behavior of the invention, which would lead the user to perceive it as a single file. The patentee instead chose not to do so. The Court should reject DET's attempt to remedy this defect in the instant case. Because the patent offers no "objective definition identifying a standard for determining" the perception of the user, the claim is indefinite. *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1350 (Fed. Cir. 2005), *abrogated on other grounds by Nautilus*, 134 S. Ct. 2120.

### C.  '545 Patent ("Spreadsheet Tab" Patent) Disputed Terms

#### 1. "Single disk file"

| Claim Term(s) | Google's Proposed Construction | DET's Proposed Construction |
|---|---|---|
| Single disk file Claims: 1 and 35. | Stored in a file on a single physical disk. | Plain and ordinary meaning. No construction necessary. |

Claims 1 and 35 of the '545 patent require the plurality of spreadsheet pages be "stored in a ***single disk file***." The intrinsic record supports Google's proposed construction. As DET admits, the phrase "single disk file" is used once in the specification where it states that "the notebook 250 includes 256 spreadsheet pages and one Graphs page, *all of which are saved as a single disk file on the mass storage* 107." (DET Opening Br. at 7; '545 patent, 7:59-62.) The only embodiment that describes mass storage 107, shown pictorially in Figure 1A, depicts it as a general hardware component of a generic computer with other hardware components such as a "pointing device," "keyboard," and "printing device." (*Id*. at 5:27-33.) The specification further exemplifies the "mass storage" by stating that it can be a "hard disk." (*Id*.) The specification, therefore, denotes that these general hardware components, such as the mass storage, which is where the single disk file is stored, are indeed tangible components of a generic computer. Put

simply, Figure 1 and its supporting text reinforce that "single disk file" means "stored in a file on a single physical disk." As Google explained in its Opening Brief, the specification's description of "mass storage" and "hard disk" are consistent with its common usage in the field of personal computers at the time of the invention.[5] Thus, Google's proposed construction tracks the description of the term in the specification and extrinsic technical references.

Although DET purports to apply the "plain and ordinary" meaning of "single disk file," DET's interpretation is inconsistent with the intrinsic evidence. Specifically, DET asserts that "single disk file" means "a single file." Such an interpretation of "single disk file" reads out the term *disk*. DET does not cite a single portion of the specification to support this alleged meaning of "single disk file." Instead, DET cites to *Webster's Pocket Dictionary of Computer*, which does not provide a definition for "disk file," but as a substitute references the term "file." (DET Opening Br. at 8.) Conversely, the definitions of the terms "disk file," "disk," and "file" in the *IBM Dictionary of Computing* are more aligned with the way the term "single disk file" is used in the specification. The *IBM Dictionary of Computing* defines "disk file" as "a set of related records on disk that are treated as a unit" and "file" as "a named set of records stored or processed as a unit." Ex. B, *IBM Dictionary of Computing*, 10th Ed. (1994). This reference further defines "disk" as a "round, flat, data medium that is rotated in order to read or write data" or a "magnetic disk." *Id.* In other words, a "disk file" is a type of "file" that is **on disk**, which is consistent with Google's proposed construction of "stored in a file on a single physical disk,"

---

[5] "Mass storage" is defined as "large-capacity backup storage such as a hard disk, external hard disk, cartridge, or streaming tape." Waldrop Decl at Ex. B (Excerpts from the *IBM Dictionary of Computing*, 10th Ed. (1994).) "Hard disk" is defined as "a rigid magnetic disk such as the internal disks used in the system units of personal computers and in external hard disk drives." *Id.*

and does not simply mean "file" as DET contends.  For all of these reasons, Google's proposed

construction for "single disk file" should be adopted.

**D.**       <u>'591 Patent (User Interface Object creation) Disputed Terms</u>

DET's "no construction" position, leaves the scope of the '591 patent's invention open to

its expert's interpretation for the jury.  DET appears to believe that the '591 patent would cover

creating spreadsheet-based applications by any means.  Indeed, DET asserts that the '591 patent

is "directed towards building graphical applications within the confines of a spreadsheet

program."  (DET Opening Br. at 3)   This is not supported by the specification, which

consistently teaches building an application by selecting object types from a menu in a graphical

user interface, and bi-directionally linking those objects to spreadsheet cells such that changes to

one are automatically made to the other.  (*See, e.g.*, Google Opening Br. at 22-23; '591 patent,

35:4-52, 39:40-52, 41:29-34, 42:45-59. 44:57-45:5, 45:17-39.)  Google's proposed constructions

would properly inform the jury of this scope of the invention taught by the specification and

prosecution history.

      1.       <u>"Generating a User Interface Object" terms</u>
              "In response to first user input, generating a user interface object;"
              "In response to third user input, generating a user interface object" and
              "Receiving first user input for generating a user interface control of a
              plurality of different types"

| Claim Term(s) | Google's Proposed Construction | DET's Proposed Construction |
|---|---|---|
| "In response to first user input, generating a user interface object of a predefined type distinct from cell objects" Claims:  1. | Generating a user interface object of a predefined type distinct from cell objects in response to a user selecting a user interface object type in a graphical user interface. | Plain and ordinary meaning. No construction necessary. |
| "In response to third user input, generating an additional user interface object of a predefined additional type distinct | Generating an additional user interface object of an additional predefined type distinct from cell objects in response to a user selecting a user interface object | Plain and ordinary meaning. No construction necessary. |

| from cell objects" Claims: 3. | type in a graphical user interface. | |
|---|---|---|
| "Receiving first user input for generating a user interface control of a plurality of different types" Claims: 13. | Receiving user input selecting a user interface control type in a graphical user interface. | Plain and ordinary meaning. No construction necessary. |

DET's "no construction" position for each of the "generating a user interface object" terms would capture claim scope not supported by the specification, including prior art means of creating applications. The parties' dispute whether the '591 patent covers generating user interface objects and applications by any means (DET's position, which would also cover prior art), or whether the patent's "UI Builder" graphical user interface is a new/specific, easier way of doing it without the difficulty of coding. Google's proposed construction should be adopted because it more clearly explains the teachings of the patent.

DET argues that Google's proposed construction describing "user input" as "selecting a user interface object type from a graphical user interface" is inappropriately limiting. (DET Opening Br. at 18-19.) Building an application by selecting user interface objects in a graphical user interface is not just a "preferred embodiment," but rather the essence of the invention. (*See, e.g.*, '591 patent, 29:31-38 ("The system of the present invention includes a dialog window toolbar 1160, shown in FIG. 11H, which contains tools that are specifically designed to help the developer build dialog boxes and toolbars.").) As Google described in its Opening Brief, every example of a user building applications according to the invention the user starts the "UI Builder" (by selecting "tools," and then "UI Builder") and then generates user interface objects by selecting buttons corresponding to those user interface objects from a toolbar. (Google Opening Br. at 22-23.)

DET fails to identify any disclosures in the '591 patent or file history to demonstrate means for "generating user interface objects" other than selecting them from a graphical user interface. Indeed, the essence of the invention is the easy creation of applications by selecting and positioning user interface objects from a graphical user interface. '591 patent, 29:8-38 ("Upon selection of a Tools UI Builder command by the developer, the system displays an empty dialog box 1130 within a dialog window, as shown in FIG. 11F. . . . The system of the present invention includes a dialog window toolbar 1160, shown in FIG. 11H, which contains tools that are specifically designed to help the developer build dialog boxes and toolbars. It includes tools which let the developer quickly create, copy, move, and test controls."); see also, 25:59-27:18 DET instead invites the Court to look for "disavowal" or "disclaimer" in the intrinsic record to the '591 patent. But whether claim scope has been disavowed is immaterial. As set forth in *Phillips v. AWH Corp.*, claim terms must be construed in context and in view of the specification and any relevant prosecution history. 415 F.3d 1303, 1312-17 (Fed. Cir. 2005).

Google does not claim that any specific scope is disclaimed, but instead has clearly shown that the patent is based on a specific means of generating user interface objects to build applications. Google explained in its Opening Brief that the specification consistently explains that this is how the invention works, and that the patentee likewise explained that the invention concerns "user-created user interface objects" in the prosecution history. (Google Opening Br. at 25.) Google's proposed constructions of the "user input [for] generating a user interface objects" should thus be adopted because they correctly teach the fact finder that the user input of the invention is "selecting a user interface object type in a graphical user interface."

2.    "Linking"

| Claim Term(s) | Google's Proposed Construction | DET's Proposed Construction |
|---|---|---|
| "Linking"<br><br>Claims: 1, 3, and 13. | Bidirectionally linking a property of a cell to a property of a user interface object such that when one object's property is changed, the other's property will be updated automatically. | Plain and ordinary meaning. No construction necessary. |

DET proposed a "no construction – plain and ordinary meaning" construction for the "linking" terms prior to the briefing, then in its Opening Brief, states that "linking" means "establishing a relationship between one thing and another."  (DET Opening Br. at 12.)  Google was never notified of this proposed construction prior to the briefing.  The issue here is whether "linking" in the '591 patent means any relationship (DET's position) or whether the patentee has given "linking" a more specific meaning to describe the invention (Google's position).  As demonstrated in Google's Opening Brief, the patentee on numerous occasions states that "linking" in the '591 patent is bi-directional, the patentee relied on this meaning to distinguish the prior art, and the examiner cited this specific feature in the Notice of Allowance to grant the patent.  Google's proposed construction, which properly teaches that the "linking" in the '591 patent is bidirectional, properly explains the invention to the fact finder and should be adopted.

DET cites a high-level explanation of certain "links" in the '591 patent at 51:50-53 ("[l]inks establish a relationship between a source object and a destination object"), and essentially argues that nothing else is important in giving the terms meaning.  (DET Opening Br. at 12.)  But DET admits that claim 1 requires bidirectional linking.  (*See, e.g.*, DET Opening Br. at 13-14 ("the elements of claim 1, taken together, shall be interpreted as meaning that a bidirectional linking between the cell value property and the user interface object property exists such that when one object's value property is changed, the other's value will be updated.")  This is the essence of Google's proposed construction.  More importantly, this bidirectional property

of the '591 patent's claims is not made clear in the claims itself, thus Google's construction is needed to inform the jury of the '591 patent's claims proper scope.

DET fails to explain or controvert the clear evidence provided by Google (and DET itself) that "linking" has a special meaning to the patentee and in the patent. DET instead dismisses clear intrinsic evidence of the definition of "linking" as an "unsupported limitation" that is "confusing and improper." (DET Opening Br. at 12-13.) Google's construction does not import a limitation as DET argues, but instead applies the inventor's own definition to clarify the scope of the claims. DET agrees that the claims require bidirectional linking. Google's proposed construction of the "linking" terms as "bidirectionally linking a property of a cell to a property of a user interface object such that when one object's property is changed, the other's property will be updated automatically" properly informs the jury of the scope of the invention and should be adopted.

3. "Displaying said user interface object with a value of said value property of said value property of the given cell object"

| Claim Term(s) | Google's Proposed Construction | DET's Proposed Construction |
|---|---|---|
| "Displaying said user interface object with a value of said value property corresponding to the value of said value property of the given cell object" <br> Claims: 1. | Automatically updating the value of the value property of said user interface object when the value of the value property of the corresponding cell is changed. | Plain and ordinary meaning. No construction necessary. |

For the "displaying said user interface object… term," Google's proposed construction reflects the explicit definition provided by the applicant, and that definition should control interpretation of the term. *Toro Co. v. White Consolidated Indus. Inc.*, 199 F.3d 1295, 1301 (Fed. Cir. 1999) (meaning of words used in a claim is not construed in a "lexicographic vacuum, but in the context of the specification and drawings").

The inventor argued during prosecution that the "displaying said user interface object…" term in the claims means "changing the value of said value property in a cell will update the corresponding value of the user interface object." (Google Opening Br. at 28-29 (June 7, 1996 Interview Summary, DETFH0002514 (JCCC at Ex. N).) Google simply asks the Court to apply the inventor's definition, while DET asks the Court to ignore the inventor's definition and instead leave the meaning to the jury's (and DET's expert's) imagination.

DET argues that Google's definition improperly equates "displaying" to "automatically updating." This argument ignores the fact that Google's construction is the inventor's own definition of the term. As Google demonstrates in its Opening Brief, the applicant explained on numerous occasions during prosecution that the invention involved "bi-directional" linking between a user-created user interface object and one or more cells. (Google Opening Br. at 28-30.) DET likewise admits that "the user interface object is 'displayed' with the value of the cell (*i.e.*, a change to the cell is reflected in the user interface object." (DET Opening Br. at 15-16.) Indeed the applicant acknowledged during prosecution that the prior art disclosed "user interface objects both for facilitating entry of data into spreadsheet cells and for representing data in the spreadsheet cells." (December 28, 1995 Final Rejection, DETFH0002460-68 (JCCC at Ex. K).) In order to obtain the patent, the patentee argued that the novelty of the invention was linking that went both ways: "One distinction is the invention's ability to connect a property of the UI control with the corresponding property of the cell so that when either has the value of the property changed, the change propagates to the other." (May 28, 1996 Claim Amendment. DETTFH0002501-11) (JCCC at Ex. M.) DET's admission above confirms that the second part of this two-part linking is also true – changes to associated cells are also automatically reflected in user interface objects. This is the essence of Google's proposed construction.

4. "End-user input that effects a change in the value of said value property of said user interface object"

| Claim Term(s) | Google's Proposed Construction | DET's Proposed Construction |
|---|---|---|
| End-user input that effects a change in the value of said value property of said user interface object<br>Claims: 1.<br><br>End-user input that specifies a change in the value of the display attribute property of said additional user interface object<br>Claims: 3. | "End-user input" means input by a person who runs a completed application to perform tasks. | Input by a person who is running a custom application operative in an electronic spreadsheet to perform tasks. |

The parties appear to agree that "end user input" refers to input by a user running an application created according to the '591 patent. Google's construction describes the application that is run as "completed," as opposed to DET's use of the term "custom." Because DET's term "custom" is subject to a number of interpretations, Google's proposal should be adopted.

## IV.  CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court adopt its proposed constructions for the disputed claim terms and phrases set forth herein.

OF COUNSEL:

Jonathan K. Waldrop
jwaldrop@kasowitz.com
Darcy L. Jones
djones@kasowitz.com
Robert P. Watkins III
rwatkins@kasowitz.com
Marcus A. Barber
mbarber@kasowitz.com
John W. Downing
jdowning@kasowitz.com
Heather S. Kim
hkim@kasowitz.com
KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP
333 Twin Dolphin Drive, Suite 200
Redwood Shores, California 94065
(650) 453-5170

Jeffrey J. Toney
jtoney@kasowitz.com
Rodney R. Miller
rmiller@kasowitz.com
KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP
1349 West Peachtree Street N.W., Suite 1500
Atlanta, Georgia 30309
(404) 260-6080

Dated:  November 20, 2015

/s/ *Frederick L. Cottrell, III*
Frederick L. Cottrell , III (#2555)
cottrell@rlf.com
Jason James Rawnsley (#5379)
rawnsley@rlf.com
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
 (302) 651-7700


*Attorneys for Defendant*
*GOOGLE INC.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2015, I caused the foregoing to be electronically filed with

the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered

participants, and have sent true and correct copies by electronic mail to the following:

Brian E. Farnan
Michael J. Farnan
FARNAN LLP
919 North Market Street
12th Floor
Wilmington, Delaware 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Amir Alavi
Demetrios Anaipakos
Brian E. Simmons
Alisa A. Lipski
Jamie Aycock
Benjamin Foster
Kenneth Young
Scott W. Clark
AHMAD, ZAVITSANOS, ANAIPAKOS,
ALAVI & MENSING, P.C.
1221 McKinney Street, Suite 3460
Houston, Texas 77010
(713) 655-1101
aalavi@azalaw.com
danaipakos@azalaw.com
bsimmons@azalaw.com
alipski@azalaw.com
jamieaycock@azalaw.com
bfoster@azalaw.com
kyoung@azalaw.com
sclark@azalaw.com

*/s/ Jason J. Rawnsley*
Jason J. Rawnsley (#5379)
rawnsley@rlf.com