## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

DATA ENGINE TECHNOLOGIES LLC,　　　:
　　　　　　　　　　　　　　　　　　:
　　　　　　Plaintiff,　　　　　　　:
　　　　　　　　　　　　　　　　　　:
　　　　v.　　　　　　　　　　　　　:　　　　C.A. No. 14-1115-LPS
　　　　　　　　　　　　　　　　　　:
GOOGLE INC.,　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
　　　　　　Defendant.　　　　　　　:

Brian E. Farnan, FARNAN LLP, Wilmington, DE

Amir Alavi, Demetrios Anaipakos, Alisa A. Lipski, Jamie A. Aycock, Benjamin Foster, Timothy
Shelby, Scott W. Clark, Monica Uddin, AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI &
MENSING, P.C., Houston, TX

　　　　Attorneys for Plaintiff Data Engine Technologies LLC.

Frederick L. Cottrell, III, Jason James Rawnsley, RICHARDS, LAYTON & FINGER, PA,
Wilmington, DE

Jonathan K. Waldrop, Darcy L. Jones, John W. Downing, Marcus Barber, Heather S. Kim,
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP, Redwood Shores, CA

Jeffrey J. Toney, Rodney R. Miller, KASOWITZ, BENSON, TORRES & FRIEDMAN LLP,
Atlanta, GA

　　　　Attorneys for Defendant Google Inc.

## MEMORANDUM OPINION

September 29, 2016
Wilmington, Delaware

STARK, U.S. District Judge:

Pending before the Court is Defendant Google Inc.'s ("Defendant" or "Google") Motion

for Judgment on the Pleadings filed pursuant to Federal Rule of Civil Procedure 12(c).  (D.I. 125)

("Motion")  Google contends that certain claims of U.S. Patent Nos. 5,590,259 ("'259 patent");

5,784,545 ("the '545 patent"); 6,282,551 ("'551 patent"); and 5,303,146 ("'146 patent") are

directed to patent-ineligible subject matter and are, therefore, invalid under 35 U.S.C. § 101.  For

the reasons below, the Court will grant Defendant's Motion.

## I.    BACKGROUND

Data Engine Technologies LLC ("Plaintiff" or "DET") sued Google on September 2,

2014, alleging infringement of the '259, '545, '551, and '146 patents, in addition to U.S. Patent

Nos. 5,416,895 ("'895 patent") and 5,623,591 ("'591 patent").[1]  (D.I. 1)  The parties stipulated to

dismiss all of DET's claims against Google related to the '895 patent.  (D.I. 46)  Google's

Motion does not address the '591 patent.  (*See* D.I. 126 at 1 n.6)

The '259, '545, '551, and '146 patents (collectively, the "Spreadsheet Patents") generally

relate to electronic spreadsheets.  (*See generally* D.I. 1 Exs. A, C, E, F)  Google's Motion

challenges the patent eligibility of all asserted claims of the Spreadsheet Patents, including

claims 1, 2, 12, 13, 16, 17, 19, 24, 46, 47, and 51 of the '259 patent; claims 1, 2, 5, 6, 7, 10, 13,

and 35 of the '545 patent; claims 1, 3, 6, 7, 10, 12, 13, 15, and 18 of the '551 patent; and claims

1, 26, 27, 28, 32, 33 and 34 of the '146 patent (collectively, "Asserted Claims").

The parties completed briefing on Google's Motion on March 4, 2016.  (D.I. 126, 147,

167)  The Court issued a Memorandum Opinion on claim construction on February 29, 2016.

---

[1]The asserted patents are attached as Exhibits A-F to the complaint (D.I. 1).

1

(D.I. 156)[2]  The Court heard oral argument on Google's Motion on April 19, 2016.  (*See* Transcript ("Tr."))

## II.      LEGAL STANDARDS

### A.      Motion for Judgment on the Pleadings

Pursuant to Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter pleadings are closed – but early enough not to delay trial."  When evaluating a motion for judgment on the pleadings, the Court must accept all factual allegations in a complaint as true and view them in the light most favorable to the non-moving party.  *See Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008); *see also Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir. 2000).  This is the same standard that applies to a Rule 12(b)(6) motion to dismiss.  *See Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991).

A Rule 12(c) motion will not be granted "unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law."  *Rosenau*, 539 F.3d at 221.  "The purpose of judgment on the pleadings is to dispose of claims where the material facts are undisputed and judgment can be entered on the competing pleadings and exhibits thereto, and documents incorporated by reference."  *Venetec Int'l, Inc. v. Nexus Med., LLC*, 541 F.Supp.2d 612, 617 (D. Del. 2008); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (explaining that any documents integral to pleadings may be considered in connection with Rule 12(c) motion).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to

---

[2]To the extent necessary, the Court will apply its claim constructions in deciding Google's Motion.

support the claims." *Burlington Coat Factory*, 114 F.3d at 1420.  Thus, a court may grant a motion for judgment on the pleadings (like a motion to dismiss) only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio*, 221 F.3d at 482 (3d Cir. 2000).

The Court may consider matters of public record as well as authentic documents upon which the complaint is based if attached to the complaint or as an exhibit to the motion. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994).  The Court may also take judicial notice of the factual record of a prior proceeding. *See Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 416 n.3 (3d Cir. 1988).  Ultimately, a motion for judgment on the pleadings can be granted "only if no relief could be afforded under any set of facts that could be proved." *Turbe*, 938 F.2d at 428.

### B.      Patent-Eligible Subject Matter

Under 35 U.S.C. § 101, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."  There are three exceptions to § 101's broad patent-eligibility principles: "laws of nature, physical phenomena, and abstract ideas." *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980).  Pertinent here is the third category, "abstract ideas," which "embodies the longstanding rule that an idea of itself is not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014) (internal quotation marks omitted).  "As early as *Le Roy v. Tatham*, 55 U.S. 156, 175 (1852), the Supreme Court explained that '[a] principle, in the abstract, is a fundamental truth; an original cause; a motive; these cannot be patented, as no one can claim in either of them an exclusive

3

right.' Since then, the unpatentable nature of abstract ideas has repeatedly been confirmed." *In re Comiskey*, 554 F.3d 967, 977-78 (Fed. Cir. 2009).

In *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289 (2012), the Supreme Court set out a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 134 S. Ct. at 2355. First, courts must determine if the claims at issue are directed to a patent-ineligible concept – in this case, an abstract idea ("step 1"). *See id.* If so, the next step is to look for an "'inventive concept' – *i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself" ("step 2"). *Id.* The two steps are "plainly related" and "involve overlapping scrutiny of the content of the claims." *Elec. Power Grp., LLC v. Alstom S.A.*, 2016 WL 4073318, at *3 (Fed. Cir. Aug. 1, 2016).

### 1.   *Mayo* **Step 1**

At step 1, "the claims are considered in their entirety to ascertain whether their character *as a whole* is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015) (emphasis added); *see also Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 2016 WL 5335501, at *3 (Fed. Cir. Sept. 23, 2016) ("The 'abstract idea' step of the inquiry calls upon us to look at the 'focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter."). Claims implemented purely in software are not necessarily directed to patent-ineligible abstract ideas under step 1. *See Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016) ("Software can make non-abstract improvements to computer technology just as hardware

4

improvements can . . . ."); *id.* ("We thus see no reason to conclude that all claims directed to improvements in computer-related technology, including those directed to software, are abstract and necessarily analyzed at the second step of *Alice*, nor do we believe that *Alice* so directs."); *see also id.* at 1338 ("[W]e are not persuaded that the invention's ability to run on a general-purpose computer dooms the claims."); *id.* at 1339 ("Much of the advancement made in computer technology consists of improvements to software that, by their very nature, may not be defined by particular physical features but rather by ***logical structures and processes***.") (emphasis added).

At step 1, the Federal Circuit has distinguished claims that are "directed to ***an improvement to computer functionality*** versus being directed to an abstract idea." *Id*. at 1335 (emphasis added). *Enfish*, for example, found claims to be not abstract because the "plain focus of the claims is on an improvement to computer functionality itself," distinguishing such patent claims from those involved in *Alice*, which involved "economic or other tasks for which a computer is used in its ordinary capacity." *Id.* at 1336. By contrast, in *Alstom*, the Federal Circuit determined that certain claims ***were*** directed to an abstract idea because "the focus of the claims is not on . . . an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools." 2016 WL 4073318, at *4. *Enfish* adds that a patent specification's disparagement of prior art or "conventional" implementations may bolster a conclusion that claims are directed to a non-abstract improvement of technology rather than an abstract idea. 822 F.3d at 1337, 1339.

Courts should not "oversimplif[y]" key inventive concepts or "downplay" an invention's benefits in conducting a step-1 analysis. *See id.* at 1337; *see also McRO, Inc. v. Bandai Namco*

*Games Am. Inc.*, 2016 WL 4896481, at *7 (Fed. Cir. Sept. 13, 2016) ("[C]ourts 'must be careful to avoid oversimplifying the claims' by looking at them generally and failing to account for the specific requirements of the claims.") (quoting *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016)). "Whether at step one or step two of the *Alice* test, in determining the patentability of a method, a court must look to the claims as an ordered combination, without ignoring the requirements of the individual steps." *McRO*, 2016 WL 4896481, at *7.

### 2.  *Mayo* Step 2

At step 2, the Federal Circuit has instructed courts to "look to both the claim as a whole and the individual claim elements to determine whether the claims contain an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *McRO*, 2016 WL 4896481, at *7 (internal brackets and quotation marks omitted). The "standard" step-2 inquiry includes consideration of whether claim elements "simply recite 'well-understood, routine, conventional activit[ies].'" *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) (quoting *Alice*, 134 S. Ct. at 2359). "Simply appending conventional steps, specified at a high level of generality, [is] not ***enough*** to supply an inventive concept." *Alice*, 134 S. Ct. at 2357 (emphasis in original; internal quotation marks omitted).

However, "[t]he inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art." *Bascom*, 827 F.3d at 1350. In *Bascom*, the Federal Circuit held that "the limitations of the claims, taken individually, recite generic computer, network and Internet components, none of which is inventive by itself," but nonetheless determined that an ***ordered combination*** of these limitations was patent-eligible under step 2. *Id.*

at 1349. The Federal Circuit has looked to the claims as well as the specification in performing the "inventive concept" inquiry. *See Affinity Labs*, 2016 WL 5335502, at *5 ("[N]either the claim nor the specification reveals any concrete way of employing a customized user interface.").

The "mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention" under step 2. *Alice*, 134 S. Ct. at 2358. "Given the ubiquity of computers, wholly generic computer implementation is not generally the sort of additional feature that provides any practical assurance that the process is more than a drafting effort designed to monopolize the abstract idea itself." *Id.*

### 3.    Preemption

The Supreme Court has instructed that, "in applying the § 101 exception, [courts] must distinguish between patents that claim the building blocks of human ingenuity and those that integrate the building blocks into something more, thereby transforming them into a patent-eligible invention." *Alice*, 134 S. Ct. at 2354 (internal citation and quotation marks omitted). The "concern that drives the exclusionary principle [i]s one of pre-emption." *Id.* That is, where a patent would preempt use of "basic tools of scientific and technological work," i.e., "[l]aws of nature, natural phenomena, and abstract ideas," the patent would "impede innovation more than it would tend to promote it, thereby thwarting the primary object of the patent laws." *Id.* (internal quotation marks omitted).

The Federal Circuit has considered the issue of preemption at both steps 1 and 2. For example, in *McRO*, 2016 WL 4896481, at *9, in support of its conclusion that a claim was patent-eligible under step 1, the Federal Circuit held that limitations of the claim "prevent[ed] preemption of all processes for achieving automated lip-synchronization of 3-D characters." In

7

*Bascom*, 2016 WL 3514158, at *7, in support of the Court's conclusion that claims reciting "a specific, discrete implementation of the abstract idea of filtering content" were patent-eligible under step 2, the Federal Circuit explained that the claims did not preempt "all ways of filtering content on the Internet."

### 4.    Machine-or-Transformation Test

"[T]he machine-or-transformation test is a useful and important clue, an investigative tool, for determining whether some claimed inventions are processes under § 101." *Bilski v. Kappos*, 561 U.S. 593, 604 (2010). However, it is "not the sole test for deciding whether an invention is a patent-eligible 'process.'" *Id.* Under the machine-or-transformation test, a patent claim that "uses a particular machine or apparatus" may be patent-eligible if it does not "pre-empt uses of the principle that do not also use the specified machine or apparatus in the manner claimed." *In re Bilski*, 545 F.3d 943, 954 (Fed. Cir. 2008). In addition, "a claimed process that transforms a particular article to a specified different state or thing by applying a fundamental principle" may be patent-eligible if it does not "pre-empt the use of the principle to transform any other article, to transform the same article but in a manner not covered by the claim, or to do anything other than transform the specified article." *Id.*

## III.    DISCUSSION

### A.    '259, '545, and '551 Patents

#### 1.    Representative Claim

The parties dispute whether claim 12 of the '259 patent is representative of all asserted claims from the '259, '545, and '551 patents (collectively, the "Tab Patents"). (D.I. 147 at 4-6; D.I. 167 at 3-4) Having reviewed the specifications of the Tab Patents as well as all asserted

claims from these three patents, the Court concludes that claim 12 of the '259 patent is

representative of all asserted claims from these patents.[3]

Claim 12 of the '259 patent recites:

> In an electronic spreadsheet system for storing and manipulating information, a computer-implemented method of representing a three-dimensional spreadsheet on a screen display, the method comprising:

> displaying on said screen display a first spreadsheet page from a plurality of spreadsheet pages, each of said spreadsheet pages comprising an array of information cells arranged in row and column format, at least some of said information cells storing user-supplied information and formulas operative on said user-supplied information, each of said information cells being uniquely identified by a spreadsheet page identifier, a column identifier, and a row identifier;

> while displaying said first spreadsheet page, displaying a row of spreadsheet page identifiers along one side of said first spreadsheet page, each said spreadsheet page identifier being displayed as an image of a notebook tab on said screen display and indicating a single respective spreadsheet page, wherein at least one spreadsheet page identifier of said displayed row of spreadsheet page identifiers comprises at least one user-settable identifying character;

> receiving user input for requesting display of a second spreadsheet page in response to selection with an input device of a spreadsheet page identifier for said second spreadsheet page;

> in response to said receiving user input step, displaying said second spreadsheet page on said screen display in a manner so as to obscure said first spreadsheet page from display while continuing to display at least a portion of said row of spreadsheet page identifiers; and

---

[3]The Court's references to other claims in the following discussion are intended to aid comprehension of the Court's analysis, but they do not detract from the representativeness of claim 12 of the '259 patent.

9

> receiving user input for entering a formula in a cell on said
> second spreadsheet page, said formula including a cell reference to
> a particular cell on another of said spreadsheet pages having a
> particular spreadsheet page identifier comprising at least one user-
> supplied identifying character, said cell reference comprising said
> at least one user-supplied identifying character for said particular
> spreadsheet page identifier together with said column identifier and
> said row identifier for said particular cell.

The asserted claims of the '259 patent broadly cover methods for rendering electronic,

three-dimensional spreadsheets, wherein individual spreadsheet pages may be labeled and

selected via user input such that selected pages are shown while others are "obscure[d]."  The

claimed spreadsheets include cells in familiar row-column format.  A cell may contain one or

more "formula[s]" which may refer to other cells on different spreadsheet pages.  In claim 46 of

the '259 patent, spreadsheet pages may be grouped such that an operation on one page may be

propagated to other pages in the group.  ('259 patent at 31:43-48)

The asserted claims of the '545 patent cover the same general concepts claimed in the

asserted claims of the '259 patent, with the addition of a limitation to each asserted claim that the

"plurality of spreadsheet pages" are "stored in a single disk file."  ('545 patent at 24:7-8, 28:46-

48)

The asserted claims of the '551 patent cover the same general concepts discussed above,

with the addition in claim 1 of a limitation that spreadsheet pages are stored "such that they

appear to the user as being stored within a single file."  ('551 patent at 24:11-13)

### 2.   *Mayo* Step 1

Step 1 requires the Court to consider whether the claims are directed to a patent-ineligible

abstract idea.  Google argues that representative claim 12 covers the abstract idea of "using

notebook-type tabs to label and organize spreadsheets." (D.I. 126 at 2)  Other computer-specific

terminology and the concept of using spreadsheet formulas in claim 12 are concepts that were

already known in the prior art, according to Google.  (*Id.* at 10)  Google argues that claim 12 is

"directed to nothing more than the basic process of organizing, indexing, and displaying

information, which can be (and has historically been) performed manually with an accountant's

columnar pad and a pencil."  (*Id.*)  The Court agrees with each of these arguments from Google.

First, the invention is clearly directed to the abstract idea of using notebook-type tabs to

label and organize spreadsheets.  The specifications of each of the Tab Patents confirm that this

tabular interface concept is the essence of the claimed invention in each of the Tab Patents.

('259 patent at 3:44-52 ("The present invention . . . provides [a] system and methods having a

highly intuitive interface for users" including, in an "exemplary" embodiment, "a notebook

interface."); '545 patent at 3:48-55 (same); '551 patent at 3:43-51 (same))

"The 'abstract idea' step of the inquiry calls upon us to look at the 'focus of the claimed

advance over the prior art' to determine if the claim's 'character as a whole' is directed to

excluded subject matter." *Affinity Labs*, 2016 WL 5335501, at *3.  Hence, it is particularly

pertinent that other concepts in the claims, such as use of formulas, are described as already

existing in the prior art. (*See* '259 patent at 1:47-2:11 (describing "typical spreadsheet program"

as including "formula" functionality for "specifying calculations to be performed on the numbers

stored in spreadsheet cells"); '545 patent at 1:49-2:16 (same); '551 patent at 1:48-2:13 (same))

The page-group propagation concept in claim 46 is merely a computer-implemented

version of a human propagating changes on multiple pages of a columnar pad and adds nothing

that renders this a claim to something other than an abstract idea.

The Court also agrees with Google that claim 12 is directed to an abstract idea that humans have commonly performed entirely in their minds, with the aid of columnar pads and writing instruments. (*See, e.g.*, '259 patent at 1:40-44) ("Better known simply as 'spreadsheets,' these software programs provide a computerized replacement for the ***traditional financial modeling tools: the accountant's columnar pad, pencil, and calculator***.") (emphasis added) "[C]omputational methods which can be performed *entirely* in the human mind are the types of methods that embody the 'basic tools of scientific and technological work' that are free to all men and reserved exclusively to none." *CyberSource*, 654 F.3d at 1373 (emphasis in original) (quoting *Gottschalk v. Benson*, 409 U.S. 63 (1972)). This reasoning further supports the Court's conclusion that the asserted claims of the Tab Patents fail to satisfy step 1.

### 3.   *Mayo* Step 2

The additional limitations in the asserted claims of the Tab Patents do not add any inventive concept that makes any of the claims patent-eligible. The concepts of storing electronic spreadsheets in a single file or on a single disk are precisely the type of generic computer limitations that the Supreme Court said could ***not*** qualify as inventive concepts in *Alice*, 134 S. Ct. at 2357. In essence, the asserted claims of the Tab Patents merely describe the abstract idea of tabbed, three-dimensional spreadsheets and say "apply it" on a generic computer. *Id.* As a matter of law, this is not an inventive concept.

The asserted claims of the Tab Patents also fail the machine-or-transformation test. The claims are not tied to a specific machine or implementation described in the respective specifications of the Tab Patents. The claims do not transform any article into a different state or thing.

12

Therefore, the asserted claims of the Tab Patents fail to satisfy step 2.

### 4.      Preemption

The focus under a preemption analysis is whether the claims would "*disproportionately* t[ie] up the use of the underlying' ideas." *Alice*, 134 S. Ct. at 2354 (quoting *Mayo*, 132 S. Ct. at 1294) (emphasis added).  Relative to the abstract idea covered by the asserted claims of the Tab Patents, the claims themselves add little-to-nothing that would meaningfully narrow them to a specific way of implementing three-dimensional, tabbed spreadsheets.  Thus, the Court finds that the claims disproportionately tie up use of the underlying abstract idea.

### 5.      Conclusion with respect to the Tab Patents

For the foregoing reasons, the Court concludes that representative claim 12 of the '259 patent, and therefore all asserted claims from the '259, '545, and '551 patents, are directed to an abstract idea.  The claims do not include an inventive concept that would make any of them patent-eligible.  The claims also disproportionately tie up use of the underlying abstract idea.

Accordingly, the asserted claims of the Tab Patents are patent-ineligible.

### B.      '146 Patent

### 1.      Representative Claims

The parties dispute whether independent claims 1 and 26 of the '146 patent are representative of all asserted claims from this patent.  (D.I. 147 at 6-7; D.I. 167 at 9-10)  Having reviewed all asserted claims from the '146 patent and the patent's specification, the Court concludes that independent claims 1 and 26 of the '146 patent are representative of all of these asserted claims.

13

Claim 1 recites:

> In an electronic spreadsheet system for modeling user-specified information in a data model comprising a plurality of information cells, a method for automatically tracking different versions of the data model, the method comprising:
>
> (a) specifying a base set of information cells for the system to track changes;
>
> (b) creating a new version of the data model by modifying at least one information cell from the specified base set; and
>
> (c) automatically determining cells of the data model which have changed by comparing cells in the new version against corresponding ones in the base set.

Claim 26 recites:

> In an electronic spreadsheet system, a method for storing different versions of a spreadsheet model, the method comprising:
>
> (a) maintaining a base version of the spreadsheet model as ordered information on a storage device; and
>
> (b) for each new version of the spreadsheet model:
>
> (i) determining portions of the new version which have changed when compared against the base version, and
>
> (ii) maintaining the new version by storing additional information for only those portions determined to have changed.

Claim 1 covers the concept of tracking changes to a "base set" of information stored in spreadsheet cells. Claim 26 covers the same "track-changes" concept, with the addition of limitations directed to storing "additional information" about changes made to one or more new versions. Claims depending from claim 26 add more specificity to the type of "additional information" stored, including, for example, ordinal denotation of successive versions of a

14

spreadsheet model.  (*See* '146 patent at 16:40-44)

> ## 2.   *Mayo* Step 1

Google argues that the asserted claims of the '146 patent are directed to the abstract idea

of "collecting data, recognizing certain data within the collected data set, and storing that

recognized data."  (D.I. 126)  The Court agrees that the claims are directed to an abstract idea –

but that abstract idea is more accurately, and narrowly, described as collecting ***spreadsheet*** data,

recognizing changes to ***spreadsheet*** data, and storing information about the changes.

The Federal Circuit has found similar claims to be directed to abstract ideas.  For

example, in *Content Extraction & Transmission LLC v. Wells Fargo Bank. Nat. Ass'n*, 776 F.3d

1343, 1347 (Fed. Cir. 2014), the Federal Circuit held that the "concept of data collection,

recognition, and storage is undisputedly well-known."  "Indeed, humans have always performed

these functions."  *Id.*

As the Court has already noted above in connection with the Tab Patents, the Tab Patents

describe the "traditional" method of using a columnar pad to implement three-dimensional

spreadsheets.  The '146 patent is directed to input of information in a (computerized) columnar

pad, recognition of changes in later versions of the inputted information, and storage of

information about the changes.  This would be straightforward for an accountant to implement in

a non-computer context.  It follows that, just like the patent-ineligible process in *Content*

*Extraction*, the asserted claims of the '146 patent are directed to an abstract idea.

Therefore, the asserted claims of the '146 patent fail to satisfy step 1.

> ## 3.   *Mayo* Step 2

There is no inventive concept in claim 1 or 26 that would make the claims patent-eligible.

The claims recite the generic steps that the abstract idea be performed in "an electronic spreadsheet system." Limitation of the claims to an electronic spreadsheet technological environment is insufficient to confer patent eligibility. *See Content Extraction*, 776 F.3d at 1348.

The asserted claims of the `146 patent also fail the machine-or-transformation test. The claims are not tied to a specific machine or implementation described in the specification. The claims do not transform any article into a different state or thing.

Therefore, the asserted claims of the `146 patent fail to satisfy step 2.

### 4. Preemption

The claims also disproportionately tie up the underlying abstract idea, because there they are not tied to any specific implementation of tracking changes in spreadsheet data.

### 5. Conclusion with respect to the '146 patent

For the foregoing reasons, the Court concludes that representative claims 1 and 26, and therefore all asserted claims of the `146 patent, are patent-ineligible.

## IV.   CONCLUSION

The Asserted Claims are directed to abstract ideas and do not contain any inventive concept. Thus, the Asserted Claims are patent-ineligible, and the Court will grant Google's Motion.[4] An appropriate order follows.

---

[4] "Whether a claim is drawn to patent-eligible subject matter under § 101 is an issue of law." *Bilski*, 545 F.3d at 951. In ruling on Google's Motion, the Court has rejected consideration of all extrinsic evidence presented by the parties and relies only on the pleadings and patents, which were attached as exhibits to the complaint, and makes its ruling as a matter of law. DET's request for leave to amend (*see* D.I. 147 at 20 n.15) will be denied because amendment would be futile, given that the Court's decision is based entirely on the claims and specifications of the patents, which cannot be amended by repleading.