# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DATA ENGINE TECHNOLOGIES LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 14-1115-LPS |
| | : | |
| GOOGLE LLC, | : | |
| | : | |
| Defendant. | : | |

Brian E. Farnan, Michael J. Farnan, FARNAN LLP, Wilmington, DE

Amir Alavi, Demetrios Anaipakos, Alisa A. Lipski, Timothy Shelby, Scott W. Clark, Monica Uddin, Nathan Campbell, Louis Liao, AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI & MENSING, P.C., Houston, TX

 Attorneys for Plaintiffs


Frederick L. Cottrell, Jason J. Rawnsley, RICHARDS, LAYTON & FINGER, PA, Wilmington DE

Gregory P. Stone, Eric P. Tuttle, Zachary M. Briers, Hannah Dubina, Ashley D. Kaplan, MUNGER, TOLLES & OLSON LLP, Los Angeles, CA

Peter A. Detre, MUNGER, TOLLES & OLSON LLP, San Francisco, CA

 Attorneys for Defendants

**MEMORANDUM OPINION**

December 9, 2019
Wilmington, Delaware

**STARK, U.S. District Judge:**

Presently before the Court is the issue of claim construction. Plaintiff Data Engine Technologies LLC ("Plaintiff") filed suit against Defendant Google LLC ("Defendant") on September 2, 2014, alleging infringement of U.S. Patent Nos. 5,590,259 (the "'259 patent"), 5,784,545 (the "'545 patent"), and 6,282,551 (the "'551 patent"). (D.I. 1) The patents-in-suit generally relate to the use of notebook-type tabs to organize and display information in a multipage electronic spreadsheet. The parties completed briefing on September 10, 2019. (D.I. 300) The Court held a claim construction hearing on October 8, 2019. (D.I. 309 ("Tr."))

**BACKGROUND**

In 2015, the parties submitted claim construction briefing relating to disputed terms including "three dimensional spreadsheet." (*See, e.g.*, D.I. 53, 87, 89) At that time, Plaintiff proposed construing "three dimensional spreadsheet" as "an electronic spreadsheet where information cells are referenced by three coordinates." (D.I. 53) Defendant proposed the plain and ordinary meaning or, in the alternative, "a computer-based spreadsheet having cells arranged in a 3D grid." (*Id.*) The parties later agreed that the term did not need construction.

Subsequently, Defendant moved for judgment on the pleadings that the asserted claims of the patents-in-suit were ineligible under 35 U.S.C. § 101. (D.I. 125) The Court granted Defendant's motion. (D.I. 263) Plaintiff appealed the entry of judgment on the pleadings to the United States Court of Appeals for the Federal Circuit. (D.I. 267) On October 9, 2018, the Federal Circuit concluded that, except for claim 1 of the '551 patent, the asserted claims of the '259, '545, and '551 patents are directed to patent-eligible subject matter. *See Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1011-13 (Fed. Cir. 2018). The Federal Circuit remanded the case for further consideration.

## LEGAL STANDARDS

The ultimate question of the proper construction of a patent is a question of law. *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 837 (2015) (citing *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 388-91 (1996)). "It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (internal quotation marks omitted).

"[T]here is no magic formula or catechism for conducting claim construction." *Id.* at 1324. Instead, the Court is free to attach the appropriate weight to appropriate sources "in light of the statutes and policies that inform patent law." *Id.*

"[T]he words of a claim are generally given their ordinary and customary meaning . . . [which is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1312-13 (internal citations and quotation marks omitted). "[T]he ordinary meaning of a claim term is its meaning to the ordinary artisan after reading the entire patent." *Id.* at 1321 (internal quotation marks omitted). The patent specification "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

While "the claims themselves provide substantial guidance as to the meaning of particular claim terms," the context of the surrounding words of the claim also must be considered. *Phillips*, 415 F.3d at 1314. Furthermore, "[o]ther claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment . . . [b]ecause claim terms are normally used consistently throughout the patent." *Id.* (internal citation omitted).

It is likewise true that "[d]ifferences among claims can also be a useful guide . . . For example, the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Id.* at 1314-15 (internal citation omitted). This "presumption is especially strong when the limitation in dispute is the only meaningful difference between an independent and dependent claim, and one party is urging that the limitation in the dependent claim should be read into the independent claim." *SunRace Roots Enter. Co., Ltd. v. SRAM Corp.*, 336 F.3d 1298, 1303 (Fed. Cir. 2003).

It is also possible that "the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs." *Phillips*, 415 F.3d at 1316. It bears emphasis that "[e]ven when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction." *Hill–Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1372 (Fed. Cir. 2014) (quoting *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004)) (internal quotation marks omitted).

In addition to the specification, a court "should also consider the patent's prosecution history, if it is in evidence." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996). The prosecution history, which is "intrinsic evidence," "consists of the complete record of the proceedings before the PTO [Patent and Trademark Office] and includes the prior art cited during the examination of the patent." *Phillips*, 415 F.3d at 1317. "[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the

invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.*

In some cases, "the district court will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period." *Teva*, 135 S. Ct. at 841. Extrinsic evidence "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980. For instance, technical dictionaries can assist the court in determining the meaning of a term to those of skill in the relevant art because such dictionaries "endeavor to collect the accepted meanings of terms used in various fields of science and technology." *Phillips*, 415 F.3d at 1318. In addition, expert testimony can be useful "to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field." *Id.* Nonetheless, courts must not lose sight of the fact that "expert reports and testimony [are] generated at the time of and for the purpose of litigation and thus can suffer from bias that is not present in intrinsic evidence." *Id.* Furthermore, "statements made by a patent owner during an IPR [inter partes review] proceeding . . . can be considered for claim construction." *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1362 (Fed. Cir. 2017). Overall, while extrinsic evidence "may be useful" to the court, it is "less reliable" than intrinsic evidence, and its consideration "is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Id.* at 1318-19. Where the intrinsic record unambiguously describes the scope of the patented invention, reliance on any

extrinsic evidence is improper. *See Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1308 (Fed. Cir. 1999) (citing *Vitronics*, 90 F.3d at 1583).

Finally, "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998). It follows that "a claim interpretation that would exclude the inventor's device is rarely the correct interpretation." *Osram GmbH v. Int'l Trade Comm'n*, 505 F.3d 1351, 1358 (Fed. Cir. 2007) (quoting *Modine Mfg. Co. v. U.S. Int'l Trade Comm'n*, 75 F.3d 1545, 1550 (Fed. Cir. 1996)).

## CONSTRUCTION OF DISPUTED TERM

### "Three-Dimensional Spreadsheet"[1]

| |
|---|
| **Plaintiff** |
| Preamble is not limiting; no construction necessary |
| Otherwise, plain and ordinary meaning, or, "a spreadsheet having cells arranged in a three-dimensional grid" |
| **Defendant** |
| Preamble is limiting |
| "A spreadsheet that defines a mathematical relation among cells on the different spreadsheet pages, such that the user can specify and use three-dimensional ranges of cells" |
| **Court** |
| Preamble is limiting |
| "A spreadsheet that defines a mathematical relation among cells on different spreadsheet pages, such that cells are arranged in a 3-D grid" |

The claim construction dispute centers on (1) whether the disputed claim term "three-dimensional spreadsheet," appearing in the preamble of the asserted claims, is limiting and (2) if

---

[1] This term appears in claims 1-8, 12-25, and 46-54 of the '259 patent; claims 1-14 and 35 of the '545 patent; and claims 1-3 and 5-19 of the '551 patent.

5

so, whether it should be construed as Plaintiff proposes, as a singular spreadsheet, having cells arranged in a three-dimensional grid, or as Defendant proposes, to include a "mathematical relation among cells on the different spreadsheet pages, such that the user can specify and use three-dimensional ranges of cells." (D.I. 300 at 3; *see also* Tr. at 9)

The Court finds that the preamble term, "three dimensional spreadsheet," is limiting because it is essential to understanding terms in the remainder of the claim. *See Catalina Marketing Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002). In *Catalina*, 289 F.3d at 801, 808-09, the Federal Circuit identified several "guideposts" useful for determining whether a preamble constitutes a claim limitation: (1) the claim is written as a *Jepson* claim; (2) the preamble is essential to understand limitations or terms in the claim body; (3) the preamble establishes antecedent basis for a term in the claim body; (4) the preamble recites structure or steps underscored as important by the specification; or (5) there was clear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art.

Here, the term "three-dimensional spreadsheet" gives "life, meaning, and vitality" to the claim and imparts structure that is not otherwise evident in the body of the claims. *Id.* For example, the body of claim 12 of the '259 patent does not (without the preamble) disclose a complete structure because it does not describe how the cells of a three-dimensional spreadsheet are arranged in a 3-D grid, or are referenced by three coordinates, as disclosed in the patent specification. (*See* '259 patent at 2:66-3:3, 9:11-10:39, 26:48-27:17) In addition, the preamble recites structure or steps underscored as important by the specification. For example, the '259 patent specification refers to improved methods for navigating through three-dimensional spreadsheets. (*See, e.g.,* '259 patent at 2:25-3:33; *see also* '259 patent at 8:51-57)

6

The Court finds additional support in Claim 35 of the '545 patent, where the preamble, "a three-dimensional spreadsheet on a screen display," provides an antecedent basis for the claim element "each of said plurality of said pages in said three-dimensional spreadsheet is associated with a unique one of said spreadsheet identifiers." ('545 patent at 28:19-51)

The importance of the term is underscored by the patentee's reliance on it during prosecution. The patentee distinguished its invention from prior art spreadsheets capable of "linking" by explaining that "a 3-D spreadsheet defines a mathematical relation among cells on the different pages so that operations such as grouping pages and establishing 3D ranges have meaning." (D.I. 301 (Briers Decl.), Ex. 1 at 7)

Turning to the appropriate construction of "three-dimensional spreadsheet," the Court agrees with Defendant that the term requires a mathematical relation among cells on different spreadsheet pages, such that cells are arranged in a three-dimensional grid. Such a requirement is consistent with the explicit teaching of the specification that "[t]hree-dimensional spreadsheets allow the user to create a worksheet having cells arranged in a 3-D grid." (*See, e.g.*, '259 patent at 2:66-3:1) The prosecution history confirms that a mathematical relationship among the different spreadsheet pages must exist to create this three-dimensional grid structure. (D.I. 301 (Briers Decl.), Ex. 1 at 7) A three-dimensional spreadsheet is distinguishable from the prior art, such as Lotus 1-2-3, because it does more than link cells in separate spreadsheet files. (*Id.*) Rather, a "true" three-dimensional spreadsheet "defines a mathematical relation among cells on different pages"– e.g., it creates a three-dimensional grid to facilitate functions or operations, *such as* "grouping" or "establishing 3D ranges,"[2] such that they "have meaning" or make sense. (*Id.*)

---

[2] Although, as explained below, the claims do not *require* the specific function of ranging.

7

Other restrictions that the parties propose to read into the disputed claim term are unsupported by the intrinsic evidence and/or the law. Defendant argues that all claimed embodiments of three-dimensional spreadsheets must allow ranging. (D.I. 300 at 11) But Defendant cites no persuasive basis to import this limitation from disclosed embodiments in the specification. *See Liebel-Flarsheim*, 358 F.3d at 906. Ranging is a permissive embodiment, just like grouping pages in the spreadsheet notebook ('259 patent at 9:43-45), and organizing and displaying the spreadsheet pages using "page identifier[s]" that look like traditional "notebook tab[s]" ('259 patent at 6:51-63, 8:1-42), which are also described in the specification. No "words or expressions of manifest exclusion or restriction" demonstrate the patentee narrowed claim scope to require 3-D ranging. *Liebel-Flarsheim*, 358 F.3d at 906.

Nor need the three-dimensional spreadsheet be limited to a singular file, as Plaintiff argues. (*See, e.g.*, Tr. at 42-44) Only certain claims – and, therefore, based on the totality of the intrinsic evidence here – not all claims limit the three-dimensional spreadsheet to "a single file," or "single disk file." (Tr. at 27-28; *see also* '551 patent at Claim 1; '545 patent at Claims 1, 35) The need to call out in certain claims that data is stored in a single file, or appears to be in a single file, indicates that this is not a mandatory characteristic of all claimed three-dimensional spreadsheets. Nor do the specification or the prosecution history support Plaintiff's proposal to limit the claims to a singular file. In telling the examiner that "a 3-D spreadsheet defines a mathematical relationship among cells on different pages so that operations such as grouping pages and establishing 2-D ranges have meaning" (D.I. 301 (Briers Decl.) Ex. 1 at 7), the patentee did not describe the interface or file-type, but merely stated the requirement that a three-dimensional spreadsheet contains a mathematical relationship among pages in all three-dimensions. (*Id.*)

8

Although the Court has reviewed the parties' extrinsic evidence (*see* D.I. 300 at 11-12; D.I. 302, 304, 305), it has based its decision solely on the intrinsic evidence. *See Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1308 (Fed. Cir. 1999).

**CONCLUSION**

The Court will construe the disputed term as explained above. An appropriate Order follows.