# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DATA ENGINEERING TECHNOLOGIES LLC, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 14-1115-LPS-CJB |
| | ) | |
| v. | ) | **PUBLIC** |
| | ) | |
| GOOGLE LLC, | ) | |
| | ) | **REDACTED VERSION** |
| Defendant. | ) | |

## DEFENDANT GOOGLE LLC'S REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY BY MICHELE M. RILEY

OF COUNSEL:
Gregory P. Stone
Eric P. Tuttle
Zachary M. Briers
Ashley D. Kaplan
Hannah Dubina
MUNGER TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071
(213) 683-9100

Peter A. Detre
MUNGER TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, California 94105
(415) 512-4000

Dated: May 15, 2020

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Jason James Rawnsley (#5379)
rawnsley@rlf.com
RICHARDS, LAYTON & FINGER, PA
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
(302) 651-7700

*Attorneys for Defendant*
*GOOGLE LLC*

# **TABLE OF CONTENTS**

**Page**

A. Plaintiff Does Not Dispute That Ms. Riley Used Unreliable And Incomplete Data, Which Dramatically Inflated Her Royalty Calculation. ........................................................1

B. Plaintiff's Attempt to Dodge The Parties' Licensing History Is Meritless.........................3

C. Mr. Bakewell Opined The Hypothetical License Would Be A Lump Sum, And Plaintiff's Contrary Arguments Badly Mischaracterize His Opinion.................................5

# **TABLE OF AUTHORITIES**

**Page**

**FEDERAL CASES**

*Bruno v. Bozzuto's, Inc.*,
  311 F.R.D. 124 (M.D. Pa. 2015)...................................................................................................3

*General Elec. Co. v. Joiner*,
  522 U.S. 136 (1997).......................................................................................................................2

*Heller v. Shaw Indus., Inc.*,
  167 F.3d 146 (3d Cir. 1999)..........................................................................................................2

*Lucent Techs., Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009)................................................................................................4, 5

*In re Mirena IUD Prods. Liability Litig.*,
  169 F. Supp. 3d 396 (S.D.N.Y. 2016)..........................................................................................3

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
  711 F.3d 1348 (Fed. Cir. 2013)....................................................................................................2

*Riles v. Shell Expl. & Prod. Co.*,
  298 F.3d 1302 (Fed. Cir. 2002)....................................................................................................3

*Sciele Pharma, Inc. v. Lupin, Ltd.*
  2013 WL 12161442 (D. Del. Jan. 31, 2013)...............................................................................4

*Uniloc USA, Inc. v. Microsoft Corp.*,
  632 F.3d 1292 (Fed. Cir. 2011)....................................................................................................4

*Whitserve, LLC v. Comput. Packages, Inc.*,
  694 F.3d 10 (Fed. Cir. 2012).........................................................................................................4

*Wordtech Sys., Inc. v. Integrated Networks Solutions, Inc.*,
  609 F.3d 1308 (Fed. Cir. 2010)....................................................................................................5

*ZF Meritor LLC v. Eaton Corp.*,
  646 F. Supp. 2d 663 (D. Del. 2009).............................................................................................2

**FEDERAL STATUTES**

28 U.S.C. § 1746..............................................................................................................................2

## TABLE OF EXHIBITS

Exhibits referenced as Ex. ___ are attached to the declaration of Zachary M. Briers filed with Google's motion, or the supplemental declaration of Zachary M. Briers as indicated below:

| Exhibit | Description |
|---|---|
| A | Excerpts from the Expert Report of Michele M. Riley dated November 15, 2019 |
| B | |
| C | Excerpts from the transcript of the deposition of Michele M. Riley taken on April 16, 2020 |
| D | |
| E | |
| F | Excerpts from the Expert Report of Michele M. Riley submitted in the matter *Data Engine Technologies, LLC v. IBM Corp.*, dated October 9, 2015 |
| G | Excerpts from the deposition of Michele M. Riley in the matter *Data Engine Technologies, LLC v. IBM Corp.*, taken on November 24, 2015 |
| H | Excerpts from the Rebuttal Expert Report of W. Christopher Bakewell dated January 17, 2020 |
| I | |
| J | |
| K | Subpoena *Duces Tecum* and Notice of Deposition ▮▮▮ dated December 2, 2015 |
| L | Excerpts from the Expert Report of Michele M. Riley dated November 15, 2019 |
| M | Borland Software Corporation, Form 10-K for period ending December 31, 2007 |
| N | Excerpts from the transcript of the deposition of Michele M. Riley taken on April 16, 2020 |
| O | Asset Purchase Agreement between Google Inc. and ▮▮▮ |
| P | Excerpts from the Rebuttal Expert Report of W. Christopher Bakewell |
| Q | |
| R | Email correspondence between Plaintiff's counsel, Drew Kim, and Google's counsel, Zachary Briers, dated April 22, 2020 |
| S | Email correspondence between Plaintiff's counsel, Drew Kim, and Google's counsel, Zachary Briers, dated May 7, 2020 |

Plaintiff's opposition confirms Ms. Riley's opinions should be excluded. Plaintiff provides no basis to excuse Ms. Riley's reliance on admittedly unreliable and incomplete data, and Plaintiff does not identify any evidence justifying Ms. Riley's use of a running royalty.

### A. Plaintiff Does Not Dispute That Ms. Riley Used Unreliable And Incomplete Data, Which Dramatically Inflated Her Royalty Calculation.

Plaintiff does not genuinely dispute that Ms. Riley relied on data that undercounted sales of ▓▓▓▓▓, inflating her royalty calculation. Demonstrating a remarkable lack of candor, Plaintiff states that "Google cannot prove that the data . . . in fact omitted" the relevant sales. Opp. at 11. This fact is not disputed, and Plaintiff's suggestion otherwise is baseless.

Ms. Riley admitted she relied on data that included only ▓▓▓▓▓, and did not include sales through other channels. *See* Ex. C at 188:16–191:4, 193:2–195:20, 200:3–201:25. This is apparent from the data itself, which states it is ▓▓▓▓▓ Ex. D. It is also obvious because, as Ms. Riley admits, ▓▓▓▓▓ ▓▓▓▓▓. Ex. C at 182:1–21. To the extent any doubt remains, a signed declaration from ▓▓▓ confirms the data Ms. Riley relied ▓▓▓▓▓, and excluded all other sales, including CD-ROM sales. *See* Ex. J ¶¶ 4–5.

Plaintiff fails to inform the Court that, prior to filing its opposition, Plaintiff's counsel spoke with ▓▓▓▓▓ and confirmed the data excludes other sales, including CD-ROM sales. *See* Briers Supp. Decl. ¶ 10. Indeed, after Ms. Riley's deposition, Plaintiff informed Google that she would supplement her report to somehow correct these errors, and that this would decrease her claimed royalty ▓▓▓▓▓. *Id.* ¶ 11. But the day before it filed its opposition, Plaintiff changed course, stating Ms. Riley would not amend her report. *Id.* ¶ 12.

Plaintiff's suggestion that Google should have corrected Ms. Riley's errors by serving its own subpoena on ▓▓▓ is also baseless. Proving damages is Plaintiff's burden. Google's

1

expert, Mr. Bakewell, opined that the hypothetical license in this case would take the form of a "one-time, lump-sum royalty." Ex. P ¶ 164. He had no reason to obtain or consider ▮▮▮▮ data. Plaintiff offers no explanation for its own lack of diligence. Plaintiff served a deposition subpoena on ▮▮▮, which sought testimony regarding the number of units of ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. K at 8. After conferring with ▮▮▮▮▮▮, however, Plaintiff abruptly dropped its request for a deposition. This is why Plaintiff now relies on an unsigned, undated "draft declaration," which is wholly inadmissible,[1] Opp. at 10, and about which Plaintiff's counsel expressed "concerns." Ex. Q at 2.

Plaintiff argues the Court should permit Ms. Riley to present an unreliable analysis because the incomplete data is only "an input" to her methodology. Opp. at 8. That is not the law. The "reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion." *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 155 (3d Cir. 1999). Where, as here, "there is simply too great an analytical gap between the data and the opinion proffered," *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997), courts routinely exclude expert opinions, *see* Mot. at 10 (citing cases).[2]

Nor was it reasonable for Ms. Riley to rely on incomplete data because it "was the best available data and came directly from ▮▮▮▮" Opp. at 11. Courts repeatedly have held that the

---

[1] The Court should not consider the "draft declaration," which is not authenticated, was not produced during discovery, and does not comply with 28 U.S.C. § 1746. Plaintiff's use of the "draft declaration" to support Ms. Riley's reliance on ▮▮▮ data is pretextual. Ms. Riley never considered the "draft declaration"—it was not cited in her report or list of materials considered.

[2] Plaintiff's attempt to distinguish *ZF* and *Power Integrations* because they involved data of an unknown source is meritless. In *ZF*, the expert relied on data "without knowing . . . the validity of the underlying data and assumptions," as Ms. Riley did here. 646 F. Supp. 2d 663, 667 (D. Del. 2009). In *Power Integrations*, aside from the unknown source, the court excluded the opinion because, like here, the data did not "provide any reliable link" to support the expert's conclusions. 711 F.3d 1348, 1373–74 (Fed. Cir. 2013).

"lack of access to reliable data does not justify the use of unreliable data, and militates against admission under *Daubert*." *In re Mirena IUD Prods. Liability Litig.*, 169 F. Supp. 3d 396, 445 (S.D.N.Y. 2016); *see also Bruno v. Bozzuto's, Inc.*, 311 F.R.D. 124, 138 (M.D. Pa. 2015) ("Experts who use data in their reports without independently verifying the accuracy or reliability of those figures fail to satisfy [the Third] Circuit's reliability requirement.").

Ms. Riley concedes she *knew* the data was incomplete since at least 2015. Ex. C. at 197:20–198:6. Plaintiff and Ms. Riley made a conscious decision not to seek additional information from ▇, choosing to rely on data they knew was incomplete. It was this self-serving decision that enabled Ms. Riley to reach the implausible conclusion that Google would pay a royalty ▇ than ▇ paid, notwithstanding that Google would obtain a license of a shorter duration and covering fewer patents. *See Bruno*, 311 F.R.D. at 138, 141.

### B. Plaintiff's Attempt to Dodge The Parties' Licensing History Is Meritless.

Plaintiff repeatedly argues that Google criticizes "an input" of Ms. Riley's analysis, "but not the methodology itself." Opp. at 2, 8. That is wrong. Google also challenges Ms. Riley's methodology, which ignored the parties' practice of licensing patents on a lump-sum basis, and which "converted" the ▇ lump sum into a running royalty with no supporting evidence.

Plaintiff does not dispute the relevant facts. Plaintiff concedes it has licensed the patents exclusively on a lump-sum basis. Plaintiff admits Google has a strong preference for lump-sum payments and has never licensed comparable patents on a running-royalty basis. And Plaintiff does not dispute that Ms. Riley is aware of *no evidence* that Plaintiff and ▇ ever calculated the ▇ lump sum on a per-unit basis. Ex. C at 161:8–20. In concluding the parties would agree upon a running royalty, Ms. Riley's analysis "ignored" the parties' "established licensing practice[s]." *Riles v. Shell Expl. & Prod. Co.*, 298 F.3d 1302, 1313 (Fed. Cir. 2002).

To avoid this conclusion, Plaintiff attempts to transmogrify its lump-sum agreements by

3

arguing that, during negotiations, it "considered" the licensee's "extent of use."  Opp. at 4–5.  That argument is meritless.  What is relevant are the terms to which Plaintiff agreed; not what it considered during negotiations.  *Cf. Sciele Pharma, Inc. v. Lupin, Ltd.* 2013 WL 12161442, at *4 (D. Del. Jan. 31, 2013) ("As a general rule license negotiations are less probative and more prejudicial than the licenses themselves.").  Plaintiff's sleight of hand also is contrary to binding authority.  The Federal Circuit has stated that "fundamental differences exist between lump-sum agreements and running-royalty agreements."  *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1330 (Fed. Cir. 2009).  This is true notwithstanding that "parties agreeing to a lump-sum royalty agreement may, during the license negotiation, consider the expected or estimated usage."  *Id.* at 1327.  In concluding that the lump-sum agreements supported a running royalty, Ms. Riley ignored these differences.  *See Whitserve, LLC v. Comput. Packages, Inc.*, 694 F.3d 10, 30 (Fed. Cir. 2012) ("[L]ump sum payments . . . should not support running royalty rates.").[3]

Plaintiff also attempts to duck Google's uniform licensing practice by arguing that "Google produced a small, limited subset of license agreements in this case."  Opp. at 5.  This argument is disingenuous.  Google produced *all* agreements responsive to Plaintiff's discovery requests, each of which demonstrates Google's practice of lump-sum licensing.

Lastly, Plaintiff mischaracterizes Google's asset purchase agreement with ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮, suggesting it supports a running royalty.  Opp. at 6.  Ms. Riley opined that the ▮▮▮▮ agreement is "not comparable" to the hypothetical license.  Ex. L ¶ 110.  As a result, she is precluded from relying on it to support her opinion.  *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1316 (Fed. Cir. 2011) ("Licenses relied on by the patentee in proving damages

---

[3] Plaintiff argues there is "evidence that Borland has agreed to running royalties," Opp. at 5, but cites only a statement from Borland's 10-K that its licensing costs were "variable," Ex. M at 36.  Ms. Riley concedes this statement relates to Borland's in-bound licenses, which are not comparable to the hypothetically negotiated license.  Ex. N at 75:20–76:18, 78:15–80:7.

4

[must be] sufficiently comparable to the hypothetical license at issue in suit."). Moreover, the ▌ agreement did not include a running royalty. It included a lump-sum purchase price, ▌ ▌ Ex. O §§ 3.3–3.5. ▌ ▌. *Id.* at Ex. E. Ms. Riley offers no basis for concluding this structure supports her use of a running royalty.

### C. Mr. Bakewell Opined The Hypothetical License Would Be A Lump Sum, And Plaintiff's Contrary Arguments Badly Mischaracterize His Opinion.

Plaintiff attempts to excuse Ms. Riley's use of a running royalty by falsely suggesting that Google's expert made the same error. Opp. at 7–8. Plaintiff grossly misrepresents Mr. Bakewell's opinions. Mr. Bakewell expressly opined that "[t]he evidence in this case very clearly shows that the appropriate form of a royalty is a one-time, lump-sum royalty." Ex. P ¶ 164. And he repeatedly criticized Ms. Riley's use of a running royalty. *Id.* ¶¶ 168, 237, 406.

Plaintiff points to the fact that Mr. Bakewell adjusted ▌ lump-sum royalty to account for the longer term of the ▌. Opp. at 7. ▌ ▌. Ex. P ¶¶ 261–62. But the license in this case would cover at most 3.7 years. *Id.*, ¶ 262. Adjusting for the shorter term, Mr. Bakewell noted that the ▌ ▌ in this case. *Id.* ¶ 267. He performed this analysis to compare the ▌ lump sum to the lump sum in the hypothetical license at issue in this case, as he is required to do. *See Wordtech Sys., Inc. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1319 (Fed. Cir. 2010). This time-based adjustment is not a running royalty. *See Lucent*, 580 F.3d at 1326 (A running royalty "is tied directly to how often the licensed invention is later used."). Mr. Bakewell opined that, in this case, the "royalty should be in the form of a lump-sum and not a running royalty." Ex. P ¶ 431. Plaintiff's suggestion otherwise is baseless.

5



| | |
|---|---|
| Dated: May 15, 2020 | */s/ Jason J. Rawnsley* <br> Frederick L. Cottrell, III (#2555) <br> Jason J. Rawnsley (#5379) <br> RICHARDS, LAYTON & FINGER, P.A. <br> 920 North King Street <br> Wilmington, DE 19801 <br> (302) 651-7700 <br> cottrell@rlf.com <br> rawnsley@rlf.com <br> <br> OF COUNSEL: <br> <br> Gregory P. Stone <br> Eric P. Tuttle <br> Zachary M. Briers <br> Hannah Dubina <br> Ashley D. Kaplan <br> MUNGER, TOLLES & OLSON LLP <br> 350 South Grand Avenue, 50th Floor <br> Los Angeles CA 90071 <br> (213) 683-9100 <br> gregory.stone@mto.com <br> eric.tuttle@mto.com <br> zachary.briers@mto.com <br> hannah.dubina@mto.com <br> ashley.kaplan@mto.com <br> <br> Peter A. Detre <br> MUNGER, TOLLES & OLSON LLP <br> 560 Mission Street, 27th Floor <br> San Francisco, CA 94105 <br> (415) 512-4000 <br> peter.detre@mto.com <br> <br> ***Attorneys for Defendant Google LLC*** |

6

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2020, I caused true and correct copies of the foregoing document to be served on the following counsel in the manner indicated:

**VIA EMAIL**
Brian E. Farnan
Michael J. Farnan
FARNAN LLP
919 North Market Street
12th Floor
Wilmington, Delaware 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

**VIA EMAIL**
Amir Alavi
Demetrios Anaipakos
Tim Shelby
Scott W. Clark
Brian E. Simmons
Drew Kim
Michael McBride
Monica Uddin
Nathan Campbell
Louis Liao
Justin Y. Chen
Masood Anjom
AHMAD, ZAVITSANOS, ANAIPAKOS,
  ALAVI & MENSING, P.C.
1221 McKinney Street, Suite 2500
Houston, Texas 77010
(713) 655-1101
aalavi@azalaw.com
danaipakos@azalaw.com
tshelby@azalaw.com
sclark@azalaw.com
bsimmons@azalaw.com
dkim@azalaw.com
mmcbride@azalaw.com
muddin@azalaw.com
ncampbell@azalaw.com
lliao@azalaw.com
jchen@azalaw.com
manjom@azalaw.com

*/s/ Jason J. Rawnsley*
Jason J. Rawnsley (#5379)
rawnsley@rlf.com