IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DATA ENGINE TECHNOLOGIES LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 14-1115-LPS |
| | : | |
| GOOGLE LLC, | : | |
| | : | |
| Defendant. | : | |

Brian E. Farnan and Michael J. Farnan, FARNAN LLP, Wilmington, DE

Amir Alavi, Demetrios Anaipakos, Timothy Shelby, Brian Simmons, Scott W. Clark, Kyung Kim, Justin Chen, Monica Uddin, Nathan Campbell, and Louis Liao, AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI & MENSING, P.C., Houston, TX

    Attorneys for Plaintiff

Frederick L. Cottrell, III and Jason J. Rawnsley, RICHARDS, LAYTON & FINGER, PA, Wilmington DE

Gregory P. Stone, Eric P. Tuttle, Zachary M. Briers, Hannah Dubina, Ashley D. Kaplan, and Heather E. Takahashi, MUNGER, TOLLES & OLSON LLP, Los Angeles, CA

Peter A. Detre, MUNGER, TOLLES & OLSON LLP, San Francisco, CA

    Attorneys for Defendant

**MEMORANDUM OPINION**

September 9, 2020
Wilmington, Delaware

**STARK, U.S. District Judge:**

Pending before the Court are Defendant Google LLC's ("Google") motion for summary judgment (D.I. 330), Google's Motion to Exclude Expert Testimony of Dr. Paul A. Navrátil Concerning Novelty, State of the Art, and Commercial Success (D.I. 334), Google's Motion to Exclude Expert Testimony of Michele M. Riley (D.I. 352), and Plaintiff Data Engine Technologies LLC's ("DET" or "Plaintiff") Motion to Strike Undisclosed Expert Opinions From the Rebuttal Expert Report of H. Scott Tucker Regarding Non-Infringement (D.I. 325).

For the reasons given below, the Court will grant Google's motion for summary judgment and deny the remaining motions as moot.

**I.    BACKGROUND**

DET filed suit against Google on September 2, 2014, alleging infringement of U.S. Patent Nos. 5,303,146 (the "'146 patent"), 5,416,895 (the "'895 patent"),[1] 5,623,591 (the "'591 patent"), 5,590,259 (the "'259 patent"), 5,784,545 (the "'545 patent"), and 6,282,551 (the "'551 patent") (together, the "patents-in-suit"). (D.I. 1) The patents-in-suit relate generally to the use of notebook-type tabs to organize and display information in a multipage electronic three-dimensional spreadsheet. (*See* D.I. 300 at 2) The accused product, Google Sheets, is a cloud-based spreadsheet application. (D.I. 333 Ex. 1 ¶ 54)

In January 2016, Google moved for judgment on the pleadings, arguing that all of DET's asserted claims are invalid under 35 U.S.C. § 101 as directed to nonpatentable subject matter. (D.I. 125) The Court granted Defendant's motion. (D.I. 263) Plaintiff appealed the entry of judgment on the pleadings to the United States Court of Appeals for the Federal Circuit. (D.I. 267)

---

[1] The parties stipulated to dismissal of the '895 patent on June 29, 2015. (D.I. 46)

1

On October 9, 2018, the Federal Circuit concluded that, except for claim 1 of the '551 patent and the asserted claims of the '146 patent, the asserted claims of the other asserted patents – the '259, '545, and '551 patents – are directed to patent-eligible subject matter. *See Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1006, 1011-13 (Fed. Cir. 2018). The Federal Circuit remanded the case for further proceedings. *Id.*

On remand, DET alleges that Google directly infringes claims 12, 13, 19, and 24 of the '259 patent, claims 1, 2, 10, 13, and 35 of the '545 patent, and claims 3, 6, 7, 12, and 13 of the '551 patent. (D.I. 331 at 2) As part of the remand proceedings, on October 8, 2019, the Court held a claim construction hearing. (D.I. 309) The Court issued a memorandum opinion and order regarding claim construction on December 9, 2019. (D.I. 312, 313) The Court construed the disputed claim term "three-dimensional spreadsheet" to mean "a spreadsheet that defines a mathematical relation among cells on the different spreadsheet pages, such that cells are arranged in a 3-D grid." (D.I. 313)

On May 26, 2020, the Court heard oral argument on the pending motions. (*See* D.I. 379) ("Tr.")

## II. LEGAL STANDARDS

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information,

2

affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005), *abrogated on other grounds by Rotkiske v. Klemm*, 890 F.3d 422, 428 (3d Cir. 2018) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the nonmoving party. *Anderson*, 477 U.S. at 252.

## III. DISCUSSION

### A. Google's Motion for Summary Judgment

Google has asserted four independent grounds on which it contends the Court may grant summary judgment of non-infringement. (D.I. 331 at 1-2)[2] The Court will address only Google's first ground, based on the "three-dimensional spreadsheet"[3] limitation, as it is dispositive on non-infringement of all the asserted claims.

"[I]nfringement is assessed by comparing the accused device to the claims. . . . [T]he accused device infringes if it incorporates every limitation of a claim, either literally or under the doctrine of equivalents." *Nazomi Commc'ns, Inc. v. Arm Holdings, PLC*, 403 F.3d 1364, 1372 (Fed. Cir. 2005). "If, however, even one claim limitation is missing or not met, there is no literal infringement." *MicroStrategy Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1352 (Fed. Cir. 2005) (internal citation omitted). Summary judgment is appropriate when the accused infringer either provides evidence precluding infringement or demonstrates the lack of evidence supporting

---

[2] Google's second basis for non-infringement is that Google does not directly infringe any of the asserted claims because execution of its software on a user's computer is performance by the user, not by Google. (D.I. 331 at 15-30) Google's third ground for summary judgment is based on the asserted claims' requirement for a notebook tab interface. (*See id.* at 30-34) Google's final ground for summary judgment (*see id.* at 34-37) relates solely to the asserted claims of the '545 patent, which require that the plurality of spreadsheet pages and their data and formulas be "stored in a single disk file," which the Court has construed to mean stored in a "single electronic file" (D.I. 157).

[3] This term appears in claims 1-8, 12-25, and 46-54 of the '259 patent; claims 1-14 and 35 of the '545 patent; and claims 1-3 and 5-19 of the '551 patent. (D.I. 312 at 5; D.I. 313)

4

infringement as to any claim element. *See Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001).

Asserted claim 12 of the '259 patent, which is illustrative of the three-dimensional spreadsheet issue that arises in connection with all asserted claims,[4] recites (with emphasis added):

> In an electronic spreadsheet system for storing and manipulating information, a computer implemented method of representing a ***three-dimensional spreadsheet*** on a screen display, the method comprising:
>
> displaying on said screen display a first spreadsheet page from a plurality of spreadsheet pages, each of said spreadsheet pages comprising an array of information cells arranged in row and column format, at least some of said information cells storing user-supplied information and formulas operative on said user-supplied information, each of said information cells being uniquely identified by a spreadsheet page identifier, a column identifier, and a row identifier;
>
> while displaying said first spreadsheet page, displaying a row of spreadsheet page identifiers along one side of said first spreadsheet page, each said spreadsheet page identifier being displayed as an image of a notebook tab on said screen display and indicating a single respective spreadsheet page, wherein at least one spreadsheet page identifier of said displayed row of spreadsheet page identifiers comprises at least one user-settable identifying character;
>
> receiving user input for requesting display of a second spreadsheet page in response to selection with an input device of a spreadsheet page identifier for said second spreadsheet page;
>
> in response to said receiving user input step, displaying said second spreadsheet page on said screen display in a manner so as to obscure said first spreadsheet page from display while continuing to display at least a portion of said row of spreadsheet page identifiers; and
>
> receiving user input for entering a formula in a cell on said second spreadsheet page, said formula including a cell reference to a particular cell on another of said spreadsheet pages having a

---

[4] The full text of the other asserted claims can be seen at D.I. 331 Appendix 1.

> particular spreadsheet page identifier comprising at least one user-supplied identifying character, said cell reference comprising said at least one user-supplied identifying character for said particular spreadsheet page identifier together with said column identifier and said row identifier for said particular cell.

The Court construed "three dimensional spreadsheet" to mean "[a] spreadsheet that defines a mathematical relation among cells on the different spreadsheet pages, such that cells are arranged in a 3-D grid." (D.I. 312 at 5) The specification of the '259 patent explains that a 3-D spreadsheet has cells arranged in a 3-D grid so that "the user can manipulate dimensional ranges, i.e., solid blocks of cells." '259 patent, 2:66-3:7. The Court's construction of "three dimensional spreadsheet" is based, in part, on the prosecution history of the asserted patents. (*See* D.I. 312 at 7) (citing D.I. 333 Ex. 8 at 7)[5] There the patentee explained to the examiner that "[a] 3D spreadsheet defines a mathematical relation among cells on the different pages so that operations such as grouping pages and establishing 3D ranges have meaning." (D.I. 333 Ex. 8 at 7)[6] While the Court's construction does not require any particular functionality in order to be a 3-D spreadsheet, it does require a 3-D grid structure that could support functions such as grouping or ranging. (D.I. 312 at 8)

---

[5] Further supporting the Court's construction, the record now includes Google's expert testimony that 3-D spreadsheets must define the relative positions of cells in all three dimensions: columns, rows, and pages. (D.I. 332 Ex. A at ¶¶ 26-28)

[6] Also during prosecution, the examiner had pointed to prior art functionality under which "[a] user can link individual cells in separate spreadsheet files by referring to cells in one spreadsheet file in cells of another." (D.I. 333 Ex. 8 at 7) The patentee explained that this "ability to link individual cells in separate spreadsheet files falls far short of a true 3-D spreadsheet" because a "3D spreadsheet" not only allows the user to reference cells on a different page but also "defines a mathematical relation among cells on the different pages." (*Id.*) In construing the term "3-D spreadsheet," the Court cited to this portion of the prosecution history, in which the patentee distinguishes a "3D spreadsheet" from prior art spreadsheets that were merely capable of "linking." (D.I. 312 at 7)

Google argues that, for cells to have a mathematical relation across pages, such that they are "arranged in a 3-D grid" and satisfy the Court's construction, there must be an alignment of the cells on the different 2-D grid pages, which Google depicted in the motions hearing with the example below:



(D.I. 331 at 6; *see also* D.I. 332 Ex. B at ¶ 92) Google explained that what is depicted on the left side is not infringing while what is depicted on the right side meets the 3-D spreadsheet limitation: "[A] 3-D grid is more than just a collection of 2-D grids. You have a collection of 2-D grids on the left and, according to the Court's construction, to turn that into a 3-D grid, you have to actually define a mathematical relationship between the cells on those different grids, and so that they end up arranged in a 3-D grid on the right." (Tr. at 7)

As Google further explained, correctly in the Court's view, a 3-D grid establishes the relative dimensions of cells in three dimensions, including across pages. Google provides another example:

7



(*See* D.I. 332 Ex. B at ¶ 92) In this example, cell 1D4 is two pages, two columns, and two rows away from cell 3F6. (Tr. at 8-10) The ability to state the mathematical relationship between (for example) cells 1D4 and 3F6 is an essential feature of a 3-D spreadsheet, allowing features such as 3-D ranges, grouping, and relative references, all of which are described in the asserted patents. (*See* D.I. 312 at 7)

Based on the Court's construction of the claims (which is consistent with Google's understanding of the claims), there is no genuine dispute of material fact precluding granting summary judgment of non-infringement. Taking the evidence in the light most favorable to DET, no reasonable juror could find that Google's accused product meets the three-dimensional spreadsheet limitation.

The parties agree that Google Sheets does not have a 3-D grid structure that defines the relative position of cells in all three dimensions. (Tr. at 33-34) It is undisputed that Google Sheets does not allow a user to define the relative position of cells in all three dimensions and is, therefore, incapable of infringing the asserted patents. (Tr. at 33-34; D.I. 332 Ex. A ¶¶ 35, 47; D.I. 333 Ex. 3 at 81-83) While DET's concession on this point is sufficient to allow the Court to

8

grant summary judgment of non-infringement, the Court will further discuss some of the evidence of record, which confirms that no reasonable juror could find that Google Sheets satisfies the three-dimensional spreadsheet limitation.

For example, it is undisputed that Google Sheets lacks a 3-D grid structure. With respect to Google Sheets' long-term disk storage, spreadsheet snapshots are described as a series of two-dimensional grids. (D.I. 332 Ex. A ¶ 48; D.I. 333 Ex. 1 ¶¶ 233-35; *id.* Ex. 3 at 250) For active memory, Google Sheets' data structure requires that each spreadsheet page is represented as a two-dimensional grid object, and its software maintains a list of the multiple pages making up the spreadsheet workbook. (D.I. 332 Ex. A ¶¶ 48-50; D.I. 333 Ex. 1 at ¶¶ 234-35; *id.* Ex. 3 at 249-50) The list of pages is ordered, but the ordering of pages does not align the cells on the different pages into a 3-D grid. (D.I. 332 Ex. A ¶¶ 50-54) In other words, Google Sheets knows the relative position of cells in terms of rows and columns, and allows a user to make relative references to a cell's relative column and row position. (D.I. 332 Ex. A ¶¶ 35, 42-44, 46-47; D.I. 333 Ex. 3 at 60-61) However, Google Sheets does not define the relative position of cells on two different spreadsheet pages along a third (i.e., page) dimension. (D.I. 332 Ex. A ¶¶ 35, 42-44, 46-47; D.I. 333 Ex. 3 at 61, 81-83) Thus, for example, no reasonable juror could find that Google Sheets' data structure is able to identify (as in the example illustrated above) that cell F6 on page three of a workpad is two columns to the right, two rows down, and two pages deeper than cell D4 on page one of the same workpad. (*See* D.I. 332 Ex. A ¶¶ 24 n.3, 27 n.4, 53-54)

Google Sheets may contain multiple spreadsheet pages that can reference one another, but this is a collection of 2-D spreadsheet pages that does not define the relative position of cells in all three dimensions. (D.I. 332 Ex. A ¶¶ 50-54) (Google Sheets' "page id is not at all akin to a third dimension or z-axis along which the user can move in using the software, does not provide

9

a relative position in the third-dimension that the user can use, and does not facilitate operations or functions that the user can perform along a third dimension. That is because Google Sheets does not use the page id to define a mathematical relationship among cells on different spreadsheet pages or to create a 3-D structure.") As the Court noted in its claim construction order, "[t]he patentee distinguished its invention from prior art spreadsheets capable of 'linking' by explaining that a 3-D spreadsheet defines a mathematical relation among cells on the different pages so that operations such as grouping pages and establishing 3D ranges have meaning." (D.I. 312 at 7) (internal quotation marks omitted)

Google's expert further explained that Google Sheets is unlike other products which were known and agreed by POSAs to be 3-D spreadsheets, such as Lotus 1-2-3, CA Compete!, and Boeing Calc; all three of these programs arrange cells in a 3-D grid and define the relative position of cells in all three dimensions. (D.I. 332 Ex. A ¶¶ 39, 47; *id.* Ex. B ¶¶ 90-97, 100-01, 103-06; D.I. 333 Ex. 3 at 52-54, 64-67, 259)

DET's arguments against the Court granting summary judgment of non-infringement are based on DET's disagreement with the Court's construction and understanding of the claims. DET contends "it [is] enough to have a grid that is in three-dimensions." (Tr. at 32; *see also* D.I. 356 at 3-4) To DET, a 3-D grid is established as long as spreadsheets include equations that use cell references to different pages as variables. (D.I. 356 at 4) (citing D.I. 357 Ex. 3 ¶¶ 35-37) That is, in DET's view, a 3-D grid is established when cells are referenced by three coordinates. (D.I. 357 Ex. 2 at ¶ 183) The Court disagrees, for all the reasons given above (and in the Court's claim construction opinion).

DET contends that Google practices the claimed invention because Google Sheets allows users to reference cells by three coordinates and, in particular, to use spreadsheet pages as

10

variables. (D.I. 356 at 4-6) (citing D.I. 357 Ex. 3 ¶¶ 35-37) For example, DET's expert, Dr. Navrátil, cites to and describes a Google spreadsheet and explanatory video entitled "Olson_fundraiser." (D.I. 357 Ex. 2 ¶¶ 135-36) Dr. Navrátil explains that the electronic spreadsheet stores categories of information, such as "Student Accounts," "Fundraising," and Travel Costs," on three different pages. (D.I. 357 Ex. 2 ¶ 183; Tr. at 26) A user using Google Sheets can create a mathematical relation between the cells on these pages through the use of a formula. (D.I. 357 Ex. 2 ¶ 183; *id.* Ex. 3 ¶¶ 35-37) According to Dr. Navrátil, cells in Google Sheets are mathematical objects, and part of a set. (D.I. 357 Ex. 3 ¶¶ 9-11; Tr. at 26) DET argues that by defining a mathematical relation among cells on different spreadsheet pages, and keeping the pages as a "set," the cells are arranged in a 3-D grid structure, as the asserted claims require.

Dr. Navrátil's testimony fails to create a triable issue of fact. The Court's claim construction opinion explains: "[A] 'true' three-dimensional spreadsheet 'defines a mathematical relation among cells on different pages'– e.g., it creates a three-dimensional grid to facilitate functions or operations, such as 'grouping' or 'establishing 3D ranges,' such that they 'have meaning' or make sense." (D.I. 312 at 7) Dr. Navrátil merely confirms that Google Sheets' formulas allow a user to define their own mathematical relationship among cells in three different pages – but that (i.e., the ability to reference three coordinates) is not enough to make a spreadsheet program a 3-D spreadsheet. (*See* Tr. at 45; D.I. 332 Ex. A ¶¶ 36-37)

Dr. Navrátil's examples of what can be done in Google Sheets are indistinguishable from a collection of 2-D spreadsheet pages that can reference each other using three components – e.g., an identifier for the 2-D page being referenced, and a traditional 2-D (row and column) identifier for the particular cell on that page. As the patentee noted during prosecution, in such

11

spreadsheets, the user "reference[s] the cell using the file name" of the referenced spreadsheet page. (D.I. 333 Ex. 8 at 7) The patentee explained that the ability to "link individual cells in separate spreadsheet files by referring to cells in one spreadsheet file in cells of another" does not establish a 3-D spreadsheet. (*Id.*)

DET attempts to distinguish linked spreadsheets from a three-dimensional spreadsheet on the basis of whether the spreadsheet pages exist in a singular file. (*See* D.I. 356 at 5 n.2 ("Although a three-dimensional spreadsheet does not necessarily need to be stored in a single file, the distinction described by the patentee is between multiple, separate spreadsheets and a single spreadsheet."); *see also* D.I. 333 Ex. 8 at 7; Tr. at 30) Despite DET's contention to the contrary (*see* Tr. at 48-49), this argument is one the Court already rejected during claim construction (*see* D.I. 309 at 42-44). As the Court has previously held, a three-dimensional spreadsheet does not need to be limited to a singular file or spreadsheet. (D.I. 312 at 8)

Finally, comparing Google Sheets to Excel 3.0 – which both parties agree is not a 3-D spreadsheet (*see* D.I. 332 Ex. A ¶¶ 31, 35, 40-41; D.I. 333 Ex. 3 at 52, 291-95; D.I. 357 Ex. 3 ¶¶ 20-33) – further confirms that Google Sheets is a collection of 2-D pages that a user can visually order, but it is not a 3-D spreadsheet (D.I. 332 Ex. A ¶¶ 34-35, 42-44; D.I. 332 Ex. C ¶¶ 42-44; D.I. 333 Ex. 3 at 60-61, 82-83, 249-52). Like Google Sheets, Excel 3.0 allowed users to visually order multiple spreadsheet pages; kept an ordered list of those pages; allowed users to refer to cells on another page in a formula using the cell's page name, row number, and column letter; and let users refer to collections of 2-D ranges. (D.I. 332 Ex. A ¶¶ 32-33, 40, 47 n.7; *id.* Ex. B ¶¶ 108, 112; *id.* Ex. C ¶¶ 9, 41-44; D.I. 333 Ex. 3 at 123-26, 129-30) Excel 3.0 merely permitted "linking" among a series of 2-D grids, but it did not permit mathematical relationships to exist between all cells on all the 2-D grids (as is necessary for a 3-D spreadsheet) – all of which is also

12

true of Google Sheets. (*See, e.g.*, D.I. 332 Ex. A ¶¶ 40-44, 47 n.7; *id.* Ex. C ¶ 46; D.I. 333 Ex. 3 at 61-64) DET's proposed distinctions of Excel 3.0 (*see, e.g.*, Tr. at 29-30, 34-35; D.I. 333 Ex. 2 ¶¶ 20-33; D.I. 356 at 6-7) do not create a genuine dispute of material fact, for reasons explained by Google and its expert (*see, e.g.*, D.I. 368 at 7-8; D.I. 333 Ex. 3 at 133-37, 141-44), including that these distinctions are untethered to the Court's construction and have nothing to do with whether cells are arranged in a 3-D grid (D.I. 331 at 12-13).

Having concluded that Google Sheets does not practice the claimed three-dimensional spreadsheet, the Court will not assess Google's additional grounds for summary judgment.

**B.     Motions to Exclude or Strike Expert Testimony**

Because the Court will grant Google's motion for summary judgment regarding non-infringement with respect to all of the asserted claims, there is no need for the Court to address any of the remaining motions, all of which are directed to whether certain expert testimony should be permitted at trial – a trial that now will not happen. The Court will deny each of these motions as moot.

**IV.     CONCLUSION**

An appropriate Order follows.